VIRGINIA COMMITTEE FOR FAIR UTILITY RATES

V.

VIRGINIA ELECTRIC AND POWER CO., ET AL.

Record No. 911318

JEAN ANN FOX

V.

VIRGINIA ELECTRIC AND POWER CO., ET AL.

Record No. 911319

DIVISION OF CONSUMER COUNSEL,
OFFICE OF THE ATTORNEY GENERAL

V.

VIRGINIA ELECTRIC AND POWER CO., ET AL.

Record No. 911320

February 28, 1992

Present: All the Justices

*James C. Dimitri (Hullihen Williams Moore; Louis R. Monacell; Steven L. Dalle Mura; Christian, Barton, Epps, Brent & Chappell,* on briefs), for appellant. (Record No. 911318)

*Edward L. Flippen (Charles H. Tenser, III; Mays & Valentine,* on briefs), for appellant. (Record No. 911319)

*Edward L. Petrini, Senior Assistant Attorney General (Mary Sue Terry, Attorney General; H. Lane Kneedler, Chief Deputy Attorney General; Gail Starling Marshall, Deputy Attorney General; William H. Chambliss, Assistant Attorney General,* on briefs), for appellant. (Record No. 911320)

*Evans B. Brasfield (Richard D. Gary; Charles K. Trible; Kendrick R. Riggs; Hunton & Williams,* on brief), for appellee Virginia Electric and Power Company. (Record Nos. 911318, 911319 and 911320)

*Deborah V. Ellenberg (Stewart E. Farrar; Anthony J. Gambardella; Robert M. Gillespie,* on brief), for appellee State Corporation Commission. (Record Nos. 911318, 911319 and 911320)

JUSTICE HASSELL delivered the opinion of the Court.

These consolidated appeals of right from an order of the State Corporation Commission (the Commission) present a narrow procedural question: Is the Commission required to apply its Rate Case Rules in an expedited rate case?

During the years 1980 through 1986, Virginia Electric and Power Company (Virginia Power), a utility which provides electric service in Virginia, was engaged in substantial construction activity. The Commission permitted Virginia Power to make an accounting adjustment in its applications for rate increases during this period because Virginia Power had invested large sums of money in these projects. This accounting adjustment is referred to as construction work in progress (CWIP).

Virginia Power's revenue requirement is determined, in part, by multiplying its rate base (which consists of net capital including CWIP) by its cost of capital. If a higher level of CWIP is included in the rate base, the revenue requirement will increase and,

hence, ratepayers will pay higher rates. The inclusion of an average amount of CWIP in the formula is considered an appropriate and necessary adjustment to enable Virginia Power to earn a proper return during the rate year.

In 1986, the Commission discontinued allowance of this adjustment because Virginia Power had completed major components of its construction program. The Commission indicated at that time, however, that if Virginia Power embarked upon a new major construction program which threatened to cause a substantial decline in earnings, then the Commission might restore the adjustment.

Virginia Power filed an Application For An Increase In Electric Rates with the Commission on March 30, 1990. Virginia Power elected to file its application as an expedited rate case instead of a general rate case. The Virginia Committee for Fair Utility Rates (the Committee), an entity which consists of large industrial consumers of energy, filed a "Motion to Limit Issues or to Convert to General Rate Case." The Division of Consumer Counsel of the Office of the Attorney General filed a motion to dismiss the application or, in the alternative, to convert the case to a general rate case. The Attorney General and the Committee argued that certain issues raised in the application could not be considered in an expedited rate case.

The Commission entered a preliminary order which, *inter alia*, granted in part the Committee's motion to limit by eliminating two issues from consideration; permitted Virginia Power to proceed on its adjustment to increase its rate base by projection of certain CWIP investments made after December 31, 1989; permitted Virginia Power to implement the proposed rate increase on an interim basis subject to refund; and denied the Attorney General's motion.

Jean Ann Fox, a resident of Virginia and a Virginia Power ratepayer, was permitted to intervene in the proceedings before the Commission. She also contested Virginia Power's right to proceed on an expedited basis.

A hearing was conducted before a hearing examiner who recommended approval of a rate increase of $68,126,000. The hearing examiner rejected Virginia Power's projected CWIP adjustment, but approved a smaller adjustment which had been proposed by the Commission's staff. In its final order, the Commission adopted the staff's updated CWIP adjustment and approved a rate increase of $79,771,000.

The Attorney General, the Committee, and Fox appealed the Commission's final order. They argue that the Commission violated its own "Rules Governing Utility Rate Increase Applications" (Rate Case Rules) by permitting Virginia Power to include a CWIP adjustment in an application filed as an expedited rate case. Furthermore, the Attorney General, the Committee, and Fox argue that there is a fundamental distinction between expedited and general rate cases and that the Commission erred by failing to follow its Rules which would have prohibited Virginia Power from proceeding in an expedited rate case.

■ The Commission's power to enact rules emanates from Art. IX, § 3, of the Constitution of Virginia which states, in part:

> Before promulgating any general order, rule, or regulation, the Commission shall give reasonable notice of its contents.
>
> . . . .
>
> The Commission may prescribe its own rules of practice and procedure not inconsistent with those made by the General Assembly. The General Assembly shall have the power to adopt such rules, to amend, modify, or set aside the Commission's rules, or to substitute rules of its own.

The Commission's power to promulgate rules has been limited by certain enactments of the General Assembly. For example, Code § 12.1-25 states:

> The Commission shall prescribe its own rules of practice and procedure not inconsistent with those made by the General Assembly. Such rules shall be printed and entered upon the records of the Commission. Copies of such rules shall be furnished to county and city clerks and to any citizen of this Commonwealth who makes application therefor.

Additionally, Code § 12.1-28 states:

> Before promulgating any general order, rule, or regulation, the Commission shall give reasonable notice of its contents and shall afford interested persons having objections thereto an opportunity to present evidence and be heard. Every such order, rule or regulation shall be published in the next annual report of the Commission, and a copy of the order, rule or

regulation shall be delivered by the Commission to every person affected by it who requests a copy and copies shall be available to the public by application therefor to the Commission.

Furthermore, Rule 4:12 of the Rules of Practice and Procedure of the State Corporation Commission imposes certain restrictions upon the Commission's authority to promulgate rules:

Before promulgating any general order, rule or regulation, the Commission shall give reasonable notice of its contents and shall afford interested persons having objections thereto an opportunity to present evidence and be heard. Oral argument in all such cases shall be by leave of the Commission, but briefs in support or opposition will be received within a time period fixed by the Commission.

■ The Commission, in accordance with Art. IX, § 3, of the Virginia Constitution, Code §§ 12.1-25 and -28, and Rule 4:12 of the Rules of Practice and Procedure of the State Corporation Commission, by order dated December 4, 1984, adopted Revised Rules Governing Financial Operating Reviews in Utility Rate Case Filings. *Ex Parte: In the matter of adopting revised rules governing Financial Operating Reviews and utility rate case filings*, 1984 S.C.C. Ann. Rep. 375. These Rate Case Rules, which were amended by the Commission on August 21, 1985, state, in relevant part:

I. An application for a rate increase filed by a public utility, as defined in § 56-232, Code of Virginia . . . shall include:

. . . .

(5) Exhibits consisting of Schedules 1 through 36 shall be submitted with the utility's direct testimony. Such schedules shall be identified with the appropriate schedule number and shall be prepared in accordance with the instructions contained in the Appendix attached hereto and the following instructions:

. . . .

(7) Applications shall be filed in original with twenty (20) copies. *An application shall not be deemed* filed under § 56-238, Code of Virginia, unless it is in *full compliance with these rules.*

*Ex Parte: Rules Governing Utility Rate Increase Applications and Annual Informational Filings,* 1985 S.C.C. Ann. Rep. 478, Attachment A (emphasis added).

Rule II of the Rate Case Rules states, in relevant part:

An applicant *which has not experienced a substantial change in circumstances may file for an expedited increase in rates as an alternative to a general rate application.* If, upon timely consideration of the expedited application and supporting evidence it appears that a substantial change in circumstances has taken place since the applicant's last rate case, then the Commission may take appropriate action, such as directing that the application be dismissed or treated as a general rate application. Prior to public hearing, and subject to applicable provisions of law, an application for expedited rate increase may take effect within 30 days after the date the application is filed . . . *An applicant seeking an expedited increase in rates shall comply with the following rules in addition to the rules contained in § I above:*

. . . .

(2) An applicant, in developing its rate of return statement, shall make adjustments to its test period jurisdictional results only in accordance with the instructions accompanying Schedules 12, 13, and 14 in the Appendix attached hereto.

*Id.* (emphasis added).

Schedule 12, referenced in Rule II quoted above, states in relevant part:

In an application for an expedited increase in rates, column 2 shall consist of the ratemaking adjustments approved by the Commission in the applicant's last general rate case. . . . [T]he return on equity shown in Column 6 shall be the rate used by the Commission to determine revenue requirements in the applicant's most recent rate case.

*Id.*

Schedule 13, referenced in Rule II of the Rate Case Rules, states, in relevant part:

> In an application for an expedited increase in rates, the schedule shall be prepared using the same components and ratemaking adjustments approved by the Commission in the applicant's last general rate case.

*Id.*

■ Contrary to arguments advanced by Virginia Power and the Commission, the Commission is not empowered to ignore or waive its rules which emanate from a grant of power conferred upon the Commission by Art. IX, § 3, of the Constitution of Virginia and Code §§ 12.1-25 and -28. Rather, the Rate Case Rules, which have been duly adopted by the Commission, must be followed by the Commission unless or until changed in a manner permitted by the Virginia Constitution and by these statutes.

■ The language contained in the Rate Case Rules clearly prohibits a utility from filing an application for an expedited increase in rates if the application includes adjustments that were not approved by the Commission in the utility's last general rate case. *See* Rate Case Rules, Schedule 13. Adherence to these rules is mandatory. It is clear, and both the Commission and Virginia Power acknowledge, that a CWIP adjustment was not approved in Virginia Power's last general rate case.

The Commission, in its order which adopted the revised Rate Case Rules in 1984, observed:

> Under the proposed rules, the amount of revenue a utility can request for expedited rate relief is limited by the use of the return on equity rate used by the Commission to compute the revenue requirement in the applicant's last general rate case. An applicant's rates must further reflect the adjustments accepted by the Commission in the applicant's most recent general rate case. Companies choosing to file an expedited rate case must also design their proposed rates in a manner consistent with the Commission's order in the applicant's most recent general rate case, and must employ the allocation methodologies used by the Commission in that case. Applying the foregoing concepts, the expedited proceeding can more truly approach a "make whole" proceed-

ing, dedicated to providing utilities with the opportunity to achieve their authorized overall rate of return and return on equity, while assuring adequate service at reasonable rates.

1984 S.C.C. Ann. Rep. at 376.

The Rate Case Rules permit a utility to seek expedited relief, with implementation of rates within ·30 days, provided, among other things, that it limits its application to the rate making adjustments which were approved by the Commission in the utility's last general rate case. If a utility elects to seek an increase which includes new adjustments, the Rate Case Rules require that the application be filed and treated as a general rate case, with the rate suspended for 150 days.

Our review of the Rate Case Rules indicates that these Rules seek to create a *quid pro quo* relationship. The utility is permitted to obtain expedited implementation of its increase in rates. In return, the utility is precluded from changing its cost of equity, altering its rate design, or proposing any new accounting formula adjustment that was not approved in its last general rate case.

Furthermore, it is an elementary principle of administrative law that agencies must follow their properly promulgated rules.

> The obligation of an agency to follow its own regulations is the primary building block of administrative law:
> When an administrative agency promulgates rules to govern its proceedings, these rules must be scrupulously observed . . . . For once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to violate these rules. If an agency in its proceedings violates its rules and prejudice results, any action taken as a result of the proceedings cannot stand.

*Scott* v. *Heckler*, 768 F.2d 172, 178-79 (7th Cir. 1985) (quoting *Black* v. *ICC*, 737 F.2d 643, 652 n.3 (7th Cir. 1984)). *See also Service* v. *Dulles*, 354 U.S. 363, 382-89 (1957); *Union of Concerned Scientists* v. *Nuclear Regulatory Commission*, 711 F.2d 370, 381 (D.C. Cir. 1983).

Next, the Commission and Virginia Power note that Rule II of the Rate Case Rules provides, in part, that if the Commission finds "that a substantial change in circumstances has taken place since the applicant's last rate case, . . . the Commission may take

appropriate action." These parties then argue that because the Commission found there had been a substantial change in circumstances, it was "appropriate action" within the meaning of the Rate Case Rules for the Commission to consider the proposed CWIP adjustment in the expedited proceeding.

■ We disagree. Rule II, upon which Virginia Power and the Commission rely, cannot be interpreted in a fashion which would permit the Commission or a utility that files an application for a rate increase to ignore or circumvent clear and unambiguous requirements contained in the Rate Case Rules. For example, the first sentence of Rule II prohibits a utility from filing an expedited increase in rates as an alternative to a general rate application if the applicant has experienced a substantial change in circumstances. The interpretation that the Commission and Virginia Power urge upon this Court would permit Virginia Power to proceed on an expedited basis even though it has not complied with the basic filing requirements contained in the Rate Case Rules.

■ Accordingly, we hold that the Commission erred by permitting Virginia Power to proceed with its application on an expedited basis. We will remand these appeals to the Commission. On remand, the Commission will be instructed to enter an order requiring Virginia Power to make appropriate refunds to its ratepayers considering the views expressed in this opinion and, after that order is entered, to dismiss Virginia Power's application.

*Reversed and remanded.*