Syllabus.

## Staunton.

## Norfolk and Western Railway Company
### v.
## Commonwealth of Virginia.

September 17, 1925.

1. Corporation Commission—*Powers and Duties—Right to Pass on Validity of a Private Contract.*—While it is true that the Corporation Commission has been clothed with legislative, judicial and executive powers, yet nowhere in the organic law is the Corporation Commission empowered to pass upon the validity of a private contract or to enforce the provisions of such a contract. This is a power intrusted exclusively to the courts. The powers of the commission are limited to those powers specifically granted by the Constitution.

2. Corporation Commission—*Railroad Asking Permission to Abandon an Agency Station—Public Duty to Maintain an Agent.*—On petition by a railroad company for leave to abandon an agency station, the sole question presented to the Commission for decision was whether a public duty rested upon the railroad to maintain an agent at the station. If such public duty, after hearing proof, was found to rest upon the company, then the relief sought should be denied. On the other hand, if the service proposed was in conformity with the public needs then without any regard whatever to covenants between the railroad and other parties, the prayer should be granted.

3. Corporation Commission—*Railroad Asking Permission to Abandon an Agency Station—Public Duty to Maintain an Agent—Covenants with Individuals to Maintain Station.*—Upon petition by a railroad for leave to abandon an agency station, the Corporation Commission dismissed the petition on the ground that the relief, if granted, would impair the obligation of a private contract between the railroad and interveners in the case to maintain the station.

*Held:* Error.

Whatever private duty rested upon the company to carry out its covenants with the interveners might be enforced by the proper court, but the only duty with which the Commission was concerned was the discharge of the public duty resting upon the railroad.

Appeal from an order of the Corporation Commission.

*Reversed and remanded.*

The opinion states the case.

*Theo. W. Reath, Lucian H. Cocke* and *Lucian H. Cocke, Jr.,* for the appellant.

*Wm. D. Tompkins,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from a decision of the State Corporation Commission dismissing the petition of the Norfolk and Western Railway Company, asking permission to abandon its agency station at Barren Springs, Virginia, a station on a branch of its railway system.

"First: The petition alleges that prior to January 22, 1915, it maintained a station and a first class agency at Barren Springs, on its branch line in Virginia, between Pulaski and Galax, which station is located in Wythe county 5.1 miles from Allisonia on north and 6.2 miles from Foster Falls on south; that in August, 1914, petition was filed by the Norfolk and Western Railway Company for the closing of the agency at Barren Springs, which petition was made judicial case No. 465; that under and by virtue of an order of the Commission, entered on January 22, 1915, the agency at Barren Springs; was reduced to a second class agency; that is, the railway company ceased to maintain a telegraph operator at this point.

"Second: That the business at this station which was represented to this Commission as falling off dur-

ing the years of 1913 and 1914 has continued to decline and in the interest of the efficient and economical handling of the affairs of the railway company it is desired to renew the request made in 1914 for the abandonment of the use of the said station as a station agency."

By an order entered by the Commission on November 14, 1924, A. L. Gardner, on behalf of himself and other citizens similarly situated was permitted to intervene in the proceeding and contest the right of the company to have the station abandoned.

A demurrer and answer were filed by Gardner and others to the petition.

As an exhibit to the answer, the following deed was filed:

"This deed, made this twenty-ninth day of June, 1886, between Charles E. Maxwell, of the city of Brooklyn, State of New York, Edwin M. Squier, of Ranway, Union county, State of New Jersey, trustees, the Passaic Zinc Company, a corporation created under the laws of the State of New Jersey, W. E. Fulton, of Wythe county, State of Virginia, trustee, and J. W. McGavock, of Wythe county, State of Virginia, of the first part, and the Norfolk and Western Railroad Company, of the second part, witnesseth:

"Whereas the Norfolk and Western Railroad Company has located its railroad upon and through a certain tract, piece or parcel of land situated in Wythe county, State of Virginia, lying on the south side of New river and extending from lands of the Crozer Steel and Iron Company on the east, to lands of Mrs. M. V. Carter on the west.

Now, therefore, the parties of the first part for and in consideration of the construction, by the party of the second part, of a railroad through their lands

and of the covenants hereinafter contained, and in further consideration of the sum of one dollar to them paid, the receipt of which is hereby acknowledged, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the party of the second part, its successors and assigns, a right of way eighty feet in width, one half thereof on each side of the centre line as shown by the map hereto annexed and made part hereof, together with additional land at or near the station to be erected at Barren Springs for depot purposes, bounded and described as follows: Beginning at a stake in the southern line of the right of way of the Cripple Creek extension and forty feet distant from station 853 of the centre line measured at right angles therefrom, said station being in the centre of a road leading to the ferry and extending thence parallel with said centre line and forty feet distant westward therefrom south twelve degrees fifty minutes east six hundred and fifty three and four tenths feet; thence south seventy seven degrees ten minutes west one hundred feet, thence north twelve degrees fifty minutes west six hundred and fifty three and four tenths feet; thence north seventy seven degrees ten minutes east one hundred feet to the place of beginning. Containing one and one half acres.

"1. And it is further covenanted and agreed between the parties of the first and second part, hereinbefore recited, that all minerals found upon the right of way and depot grounds hereby conveyed are to be the property of the parties of the first part, but in mining for the same no openings shall be made on the right of way or depot grounds hereby conveyed and sufficient and safe supports shall be left and maintained to maintain the surface of the right of way and

depot grounds and nothing shall be done that will injure or imperil the roadbed and track, or the building or buildings erected or to be erected on the land hereby conveyed.

"2. It is further agreed between the parties of the first and second parts that the conveyance of the rights of way and depot grounds hereby made to the party of the second part by the parties of the first part shall be no longer binding or have any force or effect, unless the said railroad to be built by the party of the second part is completed through the premises herein referred to within the period of one year from the date of this conveyance.

"3. It is further covenanted and agreed by and between the parties of the first and second parts that if at any time after the date hereof the party of the second part or its successors or assigns shall for a period of sixty days abandon or cease to operate the railroad to be constructed upon the premises hereinbefore described, the premises hereby conveyed shall revert to the parties of the first part, their successors, heirs, executors or assigns.

"4. The party of the second part covenants that it will forthwith erect upon the station lot herein described a sufficient building for freight and passengers and will lay and maintain sufficient side tracks to accommodate such business and traffic as may be offered at such station and that such station shall be maintained so long as the railroad is operated by the party of the second part, its successors or assigns; and the party of the second part covenants that it will, when required by the parties of the first part, their successors or assigns, erect and maintain suitable fences along the said right of way."

It appears from the record that A. L. Gardner

and George S. Williams by deed dated the 5th day of June, 1919, became the owners of the tract of land from which the depot site was severed, and claim thereunder all the rights, appurtenances and privileges appertaining to, or in any wise belonging to, the said land, and by reason thereof are assignees of the covenants that run with the land.

The matter was disposed of by the Commission, on the petition, demurrer and answer as follows:

"On consideration whereof, the State Corporation Commission being of opinion, for reasons set forth in writing and hereby made a part of the record, that the demurrer as such should not be sustained and it is accordingly hereby overruled, but that, in view of the obligation under which the petitioner rests by virtue of the private contract for the maintenance of a station at Barren Springs, by the terms of the contract in the deed filed as 'exhibit deed No. 1' within like situation with the defendant, the petitioner has failed as a matter of law to make out a case, taking all the allegations of the petition to be true, which would justify nullifying or suspending the valid private contract in the exercise of the police power of the State, it is considered that the petition should be dismissed and permission to abandon its agency station at Barren Springs, Virginia, thereby be denied."

To this action of the Commissioner the petitioner assigns the following errors:

"1. That the Commission misconstrued the law and its authority in the premises when it refused to permit the prayer of the petitioner on the ground that a duty rested upon it to enforce the covenants of a private contract. Petitioner contends that the jurisdiction of the Commission with respect to public carriers is to define and require the performance of

their public duties, and that it has no jurisdiction over the enforcement of private contracts.

"2. That even if the Commission has jurisdiction to pass upon the validity of the covenant in the deed, the Commission erred in holding that the contract was not against public policy as applicable to the situation set forth in the petition and established by the evidence.

"3. That the Commission erred in holding that the prayer of the railway company for authority to dispense with the agency service at Barren Springs would be an abandonment of said station within the meaning of the covenant of its predecessor in title, and that the maintenance of said station as a pre-pay station for freight and a flag station for passenger service is a breach of said covenant."

(1). This ground of error is well founded. The power of the State Corporation Commission in respect to the question involved in the instant case is set forth in paragraph (b) section 156 of the Constitution and reads as follows:

"The Commission shall have the power, and be charged with the duty, of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor and of correcting abuses therein by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service facilities and conveniences as may be reasonable and just, which said * * * * rules, regulations and requirements the Commission may from time to time alter or amend."

The power thus conferred by the Constitution upon the Commission to require public service corporations to perform any public duty is carried into effect by section 3716 of the Code, which reads in part as follows:

"The Commission shall have power and authority to require by its rule, regulations and requirements all corporations * * * performing the functions of public service corporations * * * to perform and discharge any public duty or requirement imposed upon such corporations * * * * by the Constitution or by law * * * ."

The basis on which the decision of the Commission rests is that to grant the prayer of the petition would be to impair the obligation of a private contract. This conclusion is set forth in the opinion of the commissioner as follows:

"In other words, the Commission takes the position that a case, which from the standpoint of the allegations might be taken to justify relief from performance of certain public duties under ordinary circumstances where only the reasonable public requirements are under consideration, would not be sufficient to justify the same relief if granting it would impair the obligation of a private contract. In the latter case further showing would have to be made to the effect that the public interest required that the private contract be nullified or suspended."

The opinion misconceives the extent as well as the purpose of the authority vested by the Constitution in the Commission.

[1] While it is true that the Commission has been clothed with legislative, judicial and executive powers, yet nowhere in the organic law is the Corpora-

tion Commission empowered to pass upon the validity of a private contract or to enforce the provisions of such a contract. This is a power intrusted exclusively to the courts. The powers of the Commission are limited to those powers specifically granted by the Constitution.

By express grant the Commission is given the authority to regulate, supervise and control public service corporations in all matters relating to the performance of their public duties.

[2] The sole question presented to the Commission for decision was "whether a public duty rested upon the Norfolk and Western Railway Company to maintain an agent at Barren Springs." If such public duty, after hearing proof, was found to so rest upon the company, then the relief sought should be denied. On the other hand, if the service proposed was in conformity with the public needs, then without any regard whatever to the covenants contained in the deed, *supra*, the prayer should be granted.

[3] Whatever private duty rests upon the company to carry out its covenants contained in the deed may be enforced by the proper court, the only duty with which the Corporation Commission is concerned is the discharge of the public duty resting upon the railway company.

It could not be urged by the interveners, in the event the company had abandoned the Barren Springs depot, that the Commission had the authority to compel the enforcement of their private rights. In the case of abandonment the re-establishment of the station would depend not upon private rights, whether acquired by deed or otherwise, but upon public necessity. In the case of *People* v. *Railroad Commissioners*, 158 N. Y. 421, 53 N. E. 163, it appears that a number of

citizens had contributed towards the building of a station, and in consideration thereof the railroad had by contract agreed to stop its train there. Upon petition for the abandonment of the station, the court in construing the relative rights of the citizens and the company said:

"The board properly received the contract between certain citizens and the railroad company, in evidence, but it had no power to enforce that contract or set it aside. Its jurisdiction does not extend to the enforcement of contracts as such, or the award of relief for their violation. That power can be exercised only by the courts. Any attempt by the Commissioners to enforce the contract, as a contract, would have been illegal and their omission to enforce it is no bar to an action by the parties aggrieved in the proper court. They do not constitute a court, although in many respects they act as judges. They have no inherent authority, but depend for their power upon the legislature, which has not attempted to invest them in the function of granting or withholding relief based upon contractual obligations."

The second and third assignments of error call for a construction of the covenant in the deed entered into between the predecessors in title of the company and Gardner, et al. As the petition only asks for partial relief, and not for an abandonment of the Barren Springs station, and as the Commission refused to hear any evidence on the question involved, we are of the opinion that the state of the record is such that a construction of the deed at this time would be premature.

The case must be remanded with direction to the Commission to hear evidence both upon the part

of the company and the intervenors as to whether the prayer of the petition should be granted.

Remanded for further proceedings.

*Reversed and remanded.*