## Richmond

### SECRETARY OF DEFENSE ON BEHALF OF THE DEPARTMENT OF DEFENSE v. CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA.

June 11, 1976.

Record No. 751186.

Present, All the Justices.

*C. Max Vassanelli* [D.C.] (*Stanley D. Rose* [D.C.]; *Rex E. Lee, Assistant Attorney General* [D.C.]; *Christopher M. Was,* on brief), for appellant.

*Alfred Winchell Whittaker* (*Michael J. Morrisey; Robert A. Levetown,* on brief), for appellee.

COMPTON, J., delivered the opinion of the court.

In this appeal of right we consider a challenge by the Department of Defense (DOD) to an order of the State Corporation Commission (SCC) which authorized the Chesapeake and Potomac Telephone

Company of Virginia (C & P) to increase the rates charged for the Voice Command Network System (VCNS), a special service developed by C & P for DOD.

On January 9, 1974, the SCC approved rates for C & P designed to enable it to earn an overall rate of return of 8.65 percent on its Virginia jurisdictional rate base.* On January 27, 1975, when C & P filed its financial data for 1974 and its projected financial data for 1975, as required by the Commission's annual review procedures, it requested authorization to impose a tariff surcharge, which it stated was necessary to enable it to earn the 8.65 percent rate of return authorized by the Commission. C & P subsequently, on February 21, 1975, filed an application for a permanent rate increase to yield additional gross revenues of $87,819,000. The proposed rate schedules filed with the application included increases for numerous communication services provided to DOD and specifically an increase of $298,189 for the VCNS. The Secretary of Defense, on behalf of DOD and all other executive agencies of the United States, filed a notice of protest to C & P's application and participated in the hearings, which were held for six days beginning on May 20, 1975.

By order entered on August 19, 1975, the SCC authorized C & P to file revised schedules of rates and charges to produce not more than $45,429,996 in additional gross annual revenue. This included the total requested rate increase of $298,189 for the VCNS and it is this increase which DOD challenges on appeal.

DOD contends that C & P has "overrecovered" approximately $2 million in depreciation on the equipment used for the VCNS. It argues that the Commission erred in not requiring C & P to ascertain the exact value of the equipment used in connection with the VCNS, to make a downward adjustment for the depreciation taken on the equipment and to set rates for the system on a "cost of service basis." DOD's position is that because of the "overrecovery" of depreciation the rates for the VCNS were excessive before the rate increases and that this, coupled with the disproportionate increase in rates, results in discrimination.

The VCNS provides a means of rapid communication between top military and governmental officials in the Washington, D. C. area and United States command posts around the world. Omer L. Green, an accountant in the Defense Commercial Communications Office,

---

*That decision was sustained in *Howell* v. *Chesapeake and Potomac Telephone Co.,* 215 Va. 549, 211 S.E.2d 265 (1975).

testified for DOD regarding depreciation of the equipment which makes up the VCNS. He stated that when the VCNS was put into service in 1960 C & P designed rates so that the general public would not share in any portion of the costs of providing the system, which was solely for the use of DOD and executive agencies of the federal government. These rates, he testified, included a "termination charge" which was based on a 60-month termination liability period. He submitted that in spite of the fact that the system has continued in service three times the 60-month period, the rates for the VCNS still include the termination charge. He therefore concluded that C & P had "over-recovered" approximately $2 million in depreciation, and said that the Commission should require C & P to submit cost studies for the VCNS to justify the present rates.

J. S. Phillips, the General Rate Planning Administrator for C & P, testified that in adjusting rates C & P attempted to distribute the increase fairly among the many services it provides, recognizing a number of important pricing objectives. Among these were to encourage efficient use of equipment, to promote maximum development of telephone service, and to recognize changes which occurred in customer's requirements and usage patterns. To accomplish these objectives, C & P priced basic telephone services, such as residential and business local exchange service, on a Commission-approved residual pricing basis and priced special services, such as Centrex and the VCNS, on an optimum basis. This means that special, or supplemental services were priced at a maximum based on cost considerations and non-cost factors, such as market demand, and that basic services were then priced to furnish the remainder of the needed income. Phillips testified that this method of rate-making allows C & P to price basic telephone service within the reach of the vast majority of Virginians. The record contains results of studies made in 1973 which showed that the costs associated with providing basic services exceeded revenues by more than $20 million and Phillips indicated that if rates for basic residential services were fixed solely on the basis of costs for providing such service, those rates would almost double.

Cost studies were used to assure that rates for supplemental services were covering their direct costs. In this case, rates for a large percentage (in terms of revenue generated) of C & P's special services were supported, in part, by such studies, but C & P did not present

data showing the costs of providing the VCNS, asserting the data was not available.

On the subject of depreciation of the VCNS, the record shows that the Federal Communications Commission and the SCC require C & P to follow a uniform system of accounts, which provides for depreciation by broad categories of equipment on an averaging basis rather than by particular pieces of property. Phillips also testified that the VCNS is not a static system in that new equipment is being installed, old equipment is being removed, and other expenses in providing the service, such as maintenance costs, were increasing.

On cross-examination, DOD's witness Green admitted that his study, which he contended "reflects the amount of overrecovery of the investment in the VCNS" did not reflect increases in expenses of providing the VCNS such as maintenance costs, administrative expenses, or taxes. He conceded that C & P servicemen who service the system must have the highest security clearance and must be trained to service the non-Bell equipment which is part of the system. Green also admitted C & P must provide service capability for the system 24 hours a day seven days a week.

Based on this evidence, the Commission, in its order approving an overall rate increase, found that the record did not support the contention of DOD that the rates proposed for the VCNS were excessive. We agree.

Basic rate-making principles dictate that in fixing rates for a public utility the Commission must determine the utility's jurisdictional rate base, its annual gross revenues and its annual operating expenses. It must then determine the percentage rate of return on the rate base which will afford the utility reasonable opportunity to earn a fair and just return on its investment. *City of Norfolk* v. *Chesapeake and Potomac Telephone Co.*, 192 Va. 292, 301-02, 64 S.E.2d 772, 777-78 (1951).

Once the rate of return is determined, "[w]here, how and from what precise source or sources the increased revenue awarded is to be obtained is primarily an administrative duty and undertaking to be exercised by the Commission." *Id.*, 192 Va. at 320, 64 S.E.2d at 789. Implicit in this approved method of setting rates is the conclusion that non-cost factors may be considered by the Commission and unequal increases in rates for various classes of services may be granted to accomplish legitimate regulatory objectives. *Apartment House Council* v. *Potomac Electric Power Co.*, 215 Va. 291, 294-97, 208

S.E.2d 764, 766-68 (1974); *Board of Supervisors* v. *Commonwealth*, 186 Va. 963, 976-78, 45 S.E.2d 145, 151-52 (1947). As the Commission stated in its opinion: "Factors which are considered in setting the level of rates are the cost of providing the service, the relationship between classes of customers, value of the service, marketability, encouragement of efficient use of facilities, broad availability of service and a fair distribution of charges among the users."

As we apply the foregoing criteria to the facts of this case, it becomes apparent that DOD's contentions are without merit. First of all, we reject DOD's argument that the rates allowed for VCNS are unjust and unreasonable because they were increased by the full amount requested by C & P while the overall rate increase was limited to 51 percent of that sought. As a result, DOD says, it is "paying a 35 percent increase while the company-wide increase averages to only 23 [actually about 12] percent." The logical conclusion of such an argument in this case, as C & P contends, is that unjust rate discrimination exists "unless rates for all services increase proportionately." As we have just said, disproportionate increases in rates for various classes of services are not *per se* discriminatory, and in this case there is no other evidentiary basis for holding the rates in issue unjust or unreasonable. As a matter of fact, the record affirmatively shows lack of discrimination because rates for a number of services were increased, on a percentage basis, as much as or more than the rates for the VCNS.

We likewise dismiss DOD's argument that the Commission erred by failing to direct that C & P's rates for the VCNS service be developed and supported on a "cost of service" rather than a "value of service" basis. It urges that "only a rate based on cost of service can be just and reasonable." We rejected a similar argument in *Board of Supervisors, supra,* 186 Va. at 976, 45 S.E.2d at 151, when the Commission refused to require C & P to submit data showing the cost of providing service in the Arlington-Alexandria area.

Finally, as a corollary to its theory of "cost of service" rate-making, DOD argues that the Commission erred in approving rates for the VCNS service which exceeded costs because there was an "over-recovery" of investment through depreciation charges. We reject that contention for, as C & P argues, it "assumes that an identifiable portion of each rate is designed to defray depreciation expense". This assumption is repugnant to a basic concept of rate-making, namely: "Customers pay for service, not for the property used to render it.

Their payments are not contributions to depreciation or other operating expenses, or to capital of the company." *Board of Public Utilities Commissioners* v. *New York Telephone Co.*, 271 U.S. 23, 32 (1926). Moreover, the Commission properly found that DOD's evidence failed to demonstrate an "overrecovery" since depreciation charges are not applied to specific items, but to broad categories of equipment and, further, that other expenses incurred in providing VCNS service had been increasing.

In sum, we are of opinion the Commission has not exceeded its reasonably wide area of legislative discretion in this case and the order appealed from is therefore

*Affirmed.*