ANHEUSER-BUSCH COMPANIES, INC., ET AL.

v.

VIRGINIA NATURAL GAS, INC., ET AL.

Record No. 911879

June 5, 1992

Present: All the Justices

*Louis R. Monacell (James C. Dimitri; Steven L. Dalle Mura; Christian, Barton, Epps, Brent & Chappell*, on briefs), for appellants.

*Sherry H. Bridewell (Stewart E. Farrar; Anthony J. Gambardella; Deborah V. Ellenberg; Robert M. Gillespie*, on brief), for appellee State Corporation Commission.

*Guy T. Tripp, III (James A. Schmidt; Hunton & Williams*, on brief), for appellee Virginia Natural Gas.

JUSTICE COMPTON delivered the opinion of the Court.

In April 1990, appellee Virginia Natural Gas, Inc. (VNG), a public utility providing natural gas sales and transportation services in the Commonwealth, applied to the State Corporation Commission

for a general increase in its rates. VNG sought an increase that would produce additional annual revenue of approximately $6.3 million based on data for the 12 months ending December 31, 1989. With the application, VNG filed new proposed revisions to its tariffs, including its Interruptible Gas Delivery Service (Schedule 9). Gas delivery service involves the utility's transportation of gas owned by the customer as opposed to gas owned by the utility.

Appellants Anheuser-Busch Companies, Inc., Ford Motor Company, Nabisco Brands, Inc., Owens-Brockway Glass Container, Inc., Metro Machine Corporation, and U. S. Gypsum Company (collectively, Industrial Protestants) participated in the proceeding, including a hearing conducted over a three-day period before a Commission hearing examiner. The Industrial Protestants are companies that purchase from VNG gas transportation service on an interruptible basis under the Schedule 9 tariff. "Interruptible" service is inferior to "firm" service because interruptible service can be discontinued by the utility when necessary to serve its firm customers during, for example, the time of peak demand on the utility's system.

In August 1991, the Commission granted an increase in revenues of approximately $4.7 million to VNG to be recovered principally from VNG's residential and general gas service schedules; it determined that no part of that increase should be recovered from Schedule 9. The Commission refused, however, to lower the revenues recovered from customers receiving interruptible transportation service under Schedule 9 or to alter the rate design for those customers.

The Industrial Protestants filed a petition for reconsideration attacking the Commission's directives concerning revenue apportionment and rate design for interruptible transportation service. The Commission denied the petition and the Industrial Protestants have appealed of right the Commission's decision to maintain Schedule 9 rates without reduction.

 In discharging its constitutional and statutory duty to fix just and reasonable gas utility rates, the Commission performs a legislative function. Therefore, the Commission's findings and decision, which are presumed to be correct, will not be set aside on appeal "unless the Commission has exceeded its reasonably wide area of legislative discretion." *Apartment House Council* v. *PEPCO*, 215 Va. 291, 293, 208 S.E.2d 764, 765-66 (1974). "Moreover, the determination of the sources from which the increased revenues are to

be derived is peculiarly a responsibility of the Commission." *Id.* at 294, 208 S.E.2d at 766.

In fixing rates for a public utility, elementary principles dictate that the Commission must determine the utility's jurisdictional rate base, its annual gross revenues, and its annual operating expenses. The Commission "must then determine the percentage rate of return on the rate base which will afford the utility reasonable opportunity to earn a fair and just return on its investment." *Secretary of Defense* v. *C and P Tel. Co.*, 217 Va. 149, 152, 225 S.E.2d 414, 416 (1976).

When the rate of return has been determined, the Commission exercises primarily an administrative duty in deciding where, how, and from what source or sources the increased revenue awarded is to be obtained. *Id.* at 152, 225 S.E.2d at 417. "Implicit in this approved method of setting rates is the conclusion that non-cost factors may be considered by the Commission and unequal increases in rates for various classes of services may be granted to accomplish legitimate regulatory objectives." *Id.*

Confronted with the foregoing basic rate-making principles, the Industrial Protestants do not contest on appeal the revenue increase ordered by the Commission. They do dispute, however, the details of the Commission's directives regarding the associated subjects of revenue apportionment and rate design, that is, individual rates within a class.

The dispositive question is whether the Commission acted outside its reasonably wide area of legislative discretion when it declined to change rates applicable to interruptible gas transportation service. We hold that it did not.

In effect, the Industrial Protestants, which received no increase in their rates, insist that they are entitled to a reduction in rates which, if their request were granted, would most likely be apportioned to the residential class of customers. That is because the increased revenues approved by the Commission must be recovered from some source; to the extent the revenue is not recovered from one class, it must be recovered from another.

In asserting that the Commission acted arbitrarily, the Industrial Protestants seek to convince us that the Commission violated one of its "rules" when, in the words of the Industrial Protestants, the Commission set "interruptible transportation rates above cost" and set "the customer charge component of the interruptible transportation rate below cost."

The Industrial Protestants refer to a 1986 Opinion and Order of the Commission styled: *"Ex Parte*, in the matter of adopting Commission policy regarding natural gas industrial rates and transportation policies." 1986 S.C.C. Ann. Rpt. 318, 319. Noting that throughout the order the Commission indicated that the order stemmed from a "rulemaking proceeding," the Industrial Protestants say that its provisions are binding and must be mechanically followed until changed in another rulemaking proceeding, not in a general rate case.

Specifically, the Industrial Protestants refer to finding No. 5 in the order which provides: "That transportation rates should be based on the fully distributed costs as recommended by Staff." *Id.* at 324. They argue that, in the order, the Commission limited its own discretion in post-1986 cases and that it excluded consideration of non-cost items in fixing the transportation rate, pointing out that all the evidence in the present case showed that the transportation rate was set above cost. The Industrial Protestants have misconstrued and misinterpreted the nature and scope of the 1986 order.

The 1986 proceeding, which included a hearing, resulted from the Commission's concern about changes that had taken place in the natural gas industry recently caused by issuance of an order by the Federal Energy Regulatory Commission. The federal order altered the traditional roles of components of the industry such as producers, pipelines, local distribution companies, and end users. The Commission recognized that while the impetus and control of much of the change occurred at the federal level, the successful operation of the federally induced programs would depend upon the approach taken by state regulatory commissions in implementation on the state level. Factors which generated the changes included decontrol of wellhead gas prices, decline in oil prices, and competition in the domestic gas industry from Mexican and Canadian gas.

Prior to the 1986 proceeding, the Commission had received "numerous formal as well as informal requests for guidance and analysis of specific problems related to industrial rate design and transportation policies." *Id.* at 319. The Commission said: "Some of the problems which have been raised in those inquiries and proceedings can and should be most effectively decided on a general basis to facilitate a more orderly development of the regulatory scheme. However, . . . this proceeding and this order are intended to provide only a framework for the development of the natural gas industry in Virginia." *Id.* The Commission continued that: "Actual

rates and company specific considerations should and will be taken into account on a company by company basis within the framework established herein.'' *Id.*

Thus, it is clear from a reading of the whole 1986 order that the Commission was performing the worthwhile service of giving needed guidance to the gas industry, customers and utilities alike, on how the Commission would attempt to cope with the new developments in the industry. It was giving direction to the industry on how the Commission would reach discretionary judgments in the future, in combination with all other relevant factors, on a case-by-case basis.

■ The Commission was not, as argued by the Industrial Protestants, promulgating a rule of practice and procedure like the rule deemed by us to have been violated by the Commission in the recent case of *Virginia Comm. for Fair Utility Rates* v. *VEPCO*, 243 Va. 320, 414 S.E.2d 834 (1992). In that case, unlike this, the procedure prescribed in the Commission's Rate Case Rules had been disregarded and consequently the Commission considered matters that should not have been brought before it in an expedited rate case.

The 1986 order merely established policy to be utilized in the future regarding natural gas industrial rates in what the Commission described as an ''uncharted course for the industry.'' 1986 S.C.C. Ann. Rpt. at 324. Indeed, the Commission recognized that the policy was flexible, not rigid like a procedural rule, to enable it to retain its legislative discretion. It noted in the order: ''We must be aware of all reasonable options to maintain our ability to provide effective and innovative regulation which will allow us to meet the goal of reliable gas service at a reasonable price for the public good.'' *Id.* Moreover, the Commission stated in its opinion in the present case, referring to the 1986 order as a ''Generic Transportation Order,'' that ''the purpose of the Generic Transportation Order was to reassess natural gas industrial rates and transportation policies, and *not* to adopt specific rates or a particular cost of service methodology for jurisdictional gas public utilities. The specific rates, revenue apportionments, and rate design for transportation service were to be developed on a case specific, fact specific basis.''

■ Contrary to the contention of the Industrial Protestants, the Commission has not disregarded the provisions of the 1986 order. Rather, the Commission has applied the policies set out in the order to the facts before it in this case by refusing to set transportation rates strictly at cost of providing that service. This is demonstrated by the following comments found in the Commission opinion.

"The appropriate revenue apportionment and rate design for VNG involve consideration of several factors which impact the speed at which customers in various classes begin paying a return approaching the average return on the system paid by all customers taken together ('parity of return'). We have recognized that class cost of service studies provide only rough approximations of the returns that are produced by customer classes. . . . Indeed this record is replete with warnings about the weight to be given the rates of return and index results of those studies. Giving some weight to the results of the class cost of service guides before us, we determined that it was inappropriate to reduce the revenues to be recovered from Schedule 9."

Concluding, the Commission said:

"In our judgment, moderating the speed at which Schedule 9 was brought towards parity of return was an appropriate regulatory response to achieve as great a parity of return among all rate classes as possible, while avoiding rate shock and maintaining rate continuity. Such a choice is consistent with the gradual movement to parity we have undertaken in other utility cases."

Finally, we reject the Industrial Protestants' contention that, with respect to designing the transportation rate, there is no basis in the record to justify the Commission's action. The Commission refused to adopt the Industrial Protestants' proposals to change the rate design in Schedule 9 because the Commission had determined not to change the amount of revenues apportioned to Schedule 9. The Commission noted: "The Industrial Protestants presented no analysis of the effect of their rate structure proposals on the bills paid by customers served within each rate tier. Hence we cannot ascertain the impact that the proposals to alter Schedule 9's rate design and rate blocks would have on the revenues recovered from this class." We cannot say, given the broad legislative discretion possessed by the Commission in such matters, that it arbitrarily declined to alter the rate structure of Schedule 9.

Consequently, the order of the Commission appealed from will be

*Affirmed.*