# CIRCUIT COURT OF THE CITY OF NORFOLK

Mar Tech Mechanical, Ltd.

v.

Chianelli Building Corp.
and Liberty Mutual Ins. Co.

March 6, 2001

Case No. (Law) L00-2234

BY JUDGE CHARLES D. GRIFFITH, JR.

Plaintiff Mar Tech Mechanical is a subcontractor in the business of providing various services and materials for building projects. In its Motion for Judgment filed September 21, 2000, Plaintiff alleges it contracted with Defendant Chianelli Building Corporation (CBC), a general contractor, for work to be performed on a public school project. Plaintiff has sued Defendant CBC under various theories and has also sued Defendant Liberty Mutual Insurance Company, which issued a payment bond for the project. Defendants have filed demurrers to each count of the Motion for Judgment.

## Standards for Demurrer

A demurrer challenges the legal sufficiency of factual allegations and shall be granted if the plaintiff's pleadings do not state a cause of action or fail to state facts upon which relief can be granted. Va. Code § 8.01-273 (Michie 1950); *Fun v. Virginia Military Inst.*, 245 Va. 249, 427 S.E.2d 181 (1993). A demurrer admits the truth of all facts properly pleaded and all reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. *Fox v. Custis*, 236 Va. 69, 372 S.E.2d 373

(1988). Further, the Virginia Supreme Court has warned the trial courts against incorrectly short-circuiting litigation at the pretrial level by deciding the dispute without permitting the parties to reach a trial on the merits. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 277 (1993).

The fundamental rule of pleading is that the facts must be so stated as to fairly apprise the court and the defendant of the nature of the cause of action upon which the plaintiff relies. If the facts are sufficient in substance, but deficient in detail, the defendant's remedy is not by demurrer, but by motion for a bill of particulars. *Miller v. Grier S. Johnson, Inc.*, 191 Va. 768, 776, 62 S.E.2d 870, 874 (1951). Under the Rules of the Supreme Court, a pleading "shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Sup. Ct. R. 1:4(d). On demurrer, a court may consider the substantive allegations of the pleading as well as any accompanying exhibit mentioned in the pleading. *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156 (1991).

### Breach of Contract: CBC

Plaintiff's first count claims that Defendant CBC breached the subcontract by failing to pay Plaintiff for any work performed under the contract. *See* Motion for Judgment, ¶ 24. Specifically, Plaintiff alleges that Defendant CBC forced Plaintiff to cease working on the project for a period of time but did not allow Plaintiff a corresponding extension of time in order to complete the project. *See* Motion for Judgment, ¶ 17-18. Plaintiff alleges that because it could not complete the project by the agreed-upon date, Defendant CBC refused to pay for any work done on the project. *See* Motion for Judgment, ¶ 28-29.

Defendants have demurred to the breach of contract claim, alleging that Plaintiff's allegations constitute an attempt to recover under an implied covenant of the contract. *See* Demurrer, ¶ A, 1-2. Defendants also allege that any such claims are prohibited because Plaintiff failed to meet certain conditions precedent under the subcontract, including notice and timeliness requirements. *See* Demurrer, ¶ A, 3-5. Defendants argue that in order for Plaintiff to properly plead a breach of contract, Plaintiff must point to a specific contract section that was breached and may not rely on the allegation that Defendant CBC forced Plaintiff to cease work. *See* Brief in Support of Demurrer and Plea in Bar (Defendants' Brief) at 3.

Defendants' own arguments undercut their assertion that the forced cessation of the project does not constitute a breach of contract. In their brief, Defendants argue that "Mar Tech *quit* work on the schools. The decision to do so was Mar Tech's, not CBC's. Ultimately, either Mar Tech's quitting will be found justified or not. If justified, it may have a contractual remedy." *See* Defendants' Brief at 3 (emphasis in original). Defendants have thus pointed out the crucial discrepancy of fact in this case, whether Plaintiff's work cessation was or was not voluntary, and have correspondingly conceded that Plaintiff may have a contractual remedy.

Additionally, specific contract sections govern the alleged work cessation and may provide a basis for Plaintiff's recovery. The Subcontract Agreement provides:

> *Article II. The Contract Documents* — The terms and provisions of this Agreement with respect to the work to be performed and furnished by the Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any of the terms and provisions of the General Contract and the other Contract Documents.

The General Contract, which governs this dispute by virtue of Article II of the Subcontract Agreement, states:

> *8.3. Delays and Extensions of Time* — *8.3.1. If the Contractor is delayed at any time in progress of the Work* by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner, or *by changes ordered in the Work*, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control, or by delay authorized by the Owner pending arbitration, or by other causes which the Architect determines may justify delay, *then the Contract Time shall be extended* by Change Order for such reasonable time as the Architect may determine. [Emphasis added.]

Defendants concede that the terms of the General Contract are incorporated into the Subcontract in their own brief. *See* Defendants' Brief at 4 ("Articles I, II, and XIX [of the Subcontract] incorporate the General Conditions of the contract between the Owner and CBC. . . ."). Because the General Contract compels extensions of time when work orders are altered, Plaintiff has sufficiently pleaded a breach of the contract by alleging Defendant CBC forced the work to stop and then disallowed a work extension.

## Violation of Va. Code § 11-62.11: CBC

Va. Code § 11-62.11 requires all construction contracts awarded by divisions of the state government to include certain payment provisions. Specifically, the code section requires contracts to contain provisions requiring a contractor to, within seven days after receipt of funds from the agency, either pay a proportionate share to subcontractors or to notify the agency and subcontractor in writing of its intention to withhold such payment. *See* Va. Code § 11-62.11. Plaintiff alleges that because this provision does not appear in the subcontract, it has a private right of action sounding in breach of contract under the statute against Defendant CBC. *See* Motion for Judgment, ¶ 23.

In order for Plaintiff to recover for breach of contract, however, it need not allege a distinct right of action under Va. Code § 11-62.11, because the applicable provisions are found in the General Contract and thereby contractually bind Defendant CBC. The General Contract reads:

> *9.6.2.* The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Contractor is entitled. . . .

Because the provision for such payment is in the General Contract and is incorporated into the Subcontract, Plaintiff has sufficiently pleaded a breach of contract claim for Defendant CBC's failure to pay.

Defendants also allege that Plaintiff's breach of contract claim is barred by a 21-day notice provision found in the General Provisions of the prime contract. A similar case has already been decided by the Virginia Supreme Court. In *Commercial Construction Specialties, Inc. v. ACM Construction Management Corp.*, 242 Va. 102, 405 S.E.2d 852 (1991), the Court examined a bond that contained a provision reducing the statutory notice of claim period from 180 days to 90 days. The court concluded that the provision between the surety company and the contractor could not bind a subcontractor, because the subcontractor was not an original party to the bond, therefore the bond could not "reduce the protection afforded [the subcontractor] without its consent." *See id.* at 106.

The court also noted that the Code provisions providing for notice were specifically created to protect subcontractors and other materialmen because of their inability to perfect mechanics' liens against public property. *See id.* Because this protection was the central purpose of the applicable Code

provisions, the Court emphasized the intent of the legislature in making its decision. *See id.* Similarly, if contractors and governmental agencies could contract away the statutory rights of materialmen, effectively forcing subcontractors into a 'take it or leave it' deal, the statutory protective provisions would be paper tigers. In any event, Plaintiff has pleaded it "submitted timely claims" to Defendants and otherwise "substantially performed all conditions, covenants, and promises." *See* Motion for Judgment, ¶ 13, 30. Plaintiff also points out that "the Defendants' assertion that Mar Tech did not comply with an alleged twenty-one day notice requirement is not supported by the facts in this case and was not alleged in the Motion for Judgment." *See* Plaintiff's Brief in Response to Demurrer (Plaintiff's Brief) at 6. Because the Court must view the facts in the light most favorable to the non-moving party and because the question of timely notice is a question of fact, Plaintiff has sufficiently pleaded that proper notice was given, and the breach of contract claim is proper.

### Breach of Contract: Defendant Liberty

Defendant Liberty first argues that since the work for the project was secured by two different bonds, though arising under a single contract, Plaintiff's suit "misjoins" what should be two separate actions under each bond. In support of this contention, Defendant Liberty cites Va. Code § 8.01-272, which reads:

> *Pleading several matters; joining tort and contract claims; separate trial in discretion of court; counterclaims.* — In any civil action, a party may plead as many matters, whether of law or fact, as he shall think necessary. A party may join a claim in tort with one in contract provided that all claims so joined arise out of the same transaction or occurrence. The court, in its discretion, may order a separate trial for any claim. Any counterclaim brought in an action under Part Three of the Rules of Court shall be governed by such Rules.

Contrary to Defendant Liberty's assertion, this code section allows Plaintiff to file a single Motion for Judgment regarding both bonds, as the claims under each arise from one transaction and are essentially identical. Defendant Liberty cites no authority for the proposition that Plaintiff must file two separate actions, and, from the plain language of the statute, it is clear to the Court that he can do so.

Additionally, Defendant Liberty claims that Plaintiff filed suit to collect on the bonds after the expiration of the period of limitations found within the payment bonds in question. *See* Demurrer, ¶ B2. The bonds read in part that any claim made against the bond must be made within one year from the last day the claimant provided work on the project. *See id.* Defendant Liberty alleges that Plaintiff filed the instant action more than one year after it ceased work on the project and thus cannot collect on the bonds. *See id.*

According to Defendant Liberty, and implicitly agreed to by Plaintiff, this action "is a recommencement of an earlier action filed against Liberty on October 13, 1999, subsequently nonsuited March 23, 2000, pursuant to Virginia Code § 8.01-380(B). . . ." *See* Defendants' Brief at 5. Subsequently, Plaintiff refiled the suit on September 21, 2000, within the six months given a plaintiff to refile a nonsuited action under 8.01-229. Defendant Liberty argues that the six month period does not apply to this action because the payment bond contained a contractual period of limitation and the statutory tolling provision does not apply to contractual provisions.

This issue has previously been decided by this Court in *Southside Utilities, Inc. v. Abante Corp.*, No. L99-2869, slip op. (Norfolk, Dec. 21, 2000, Jacobson, J.) In that case, the plaintiff had taken a voluntary nonsuit and refiled within six months, under a bond that contained a contractual period of limitations as in the instant case. There, the surety company had argued that the tolling provision found in Va. Code § 8.01-229 did not apply, and that the plaintiff was barred from bringing suit, citing *Massie v. Blue Cross and Blue Shield of Va.*, 256 Va. 161, 500 S.E.2d 509 (1998), for the proposition that parties are free to contract around statutory periods of limitation. The *Massie* case goes on to decide that once parties contract around a statute of limitations, they lose the benefit of the statutory tolling provision. *See id.*

The Court in *Southside Utilities* noted that the Virginia Supreme Court has held that statutory provisions allowing a mechanic one year to file a claim against a bond cannot be contracted around. In *Joseph F. Hughes & Co. v. George H. Robinson Corp.*, 211 Va. 4, 175 S.E.2d 413 (1970), the court found a similar provision to be invalid, "because the language of the applicable code section, 11-23 (a precursor to 11-60), indicated that the provision was intended to be 'prohibitory of any other limitation'." *See Southside Utilities* at 3, *citing Hughes* at 6. Correspondingly, the *Hughes* court found that the statutory provision was controlling. *See id.*

This Court in *Southside Utilities* stated:

Since the statutory provision is controlling here, the Plaintiff receives the additional statutory benefit of the tolling statute found in Va. Code § 8.01-229(E)(3). The plain language of this tolling provision directs its application to the action at bar. It applies to "*all actions irrespective of whether they arise under common law or statute.*" [Citation omitted.] This action arises under a statute, and there is no indication that any subsequent statute or case law exempts the action from the requirement of 8.01-229(E)(3).

Likewise, in this case there is no indication that any "statute or case law exempts the action from the" tolling provision. Consequently, Plaintiff receives the benefit of the attendant six month grace period and the action was timely filed. Defendant Liberty's Demurrer is overruled.

### Quantum Meruit

Plaintiff also filed in its Motion for Judgment, a claim seeking recovery on the ground of quantum meruit, in that Defendants have been "unjustly enriched" by Plaintiff's work. *See* Motion for Judgment, ¶ 33-36. Defendants allege that this claim is improper, because Plaintiff has also alleged that an express contract exists and cannot recover for a contract implied in law. *See* Demurrer at 3. In support of this, Defendant relies on *Ward's Equipment, Inc. v. New Holland North America, Inc.*, 254 Va. 379, 493, S.E.2d 516 (1997), which holds that a court may not imply terms into an existing contract.

Nevertheless, *Ward's Equipment* does not stand for the proposition that parties may not seek to recover under both breach of contract and quantum meruit theories, even if it were not possible to actually recover under both at the same time. Here, Plaintiff merely wishes to plead alternative theories of his case, which he is clearly entitled to do, and allow the finder of fact to determine whether the parties did or did not have a contract. *See* Va. Code § 8.01-281. *See also Hoar v. Great Eastern Resort Management, Inc.*, 256 Va. 374, 506 S.E.2d 777 (1998). All Plaintiff must do to state a claim under this theory is to allege that Defendants have accepted and received its services and that Plaintiff is entitled to reasonable compensation. *See Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 255 Va. 108, 495 S.E.2d 478 (1998). Plaintiff has specifically alleged this; accordingly, Defendants' Demurrer as to the quantum meruit claim is overruled.

*Fraud*

Plaintiff also alleges that Defendant CBC committed fraud by misrepresenting to Plaintiff that it would allow Plaintiff to perform work on the project in question, when Defendant CBC's intention from the inception of the contract was not to do so. *See* Plaintiff's Brief at 11. In support of this argument, Plaintiff argues that "CBC had no intention to fulfill its duties" under the contract. *See id.* As such, Plaintiff argues that this intention is enough to constitute fraud because "this breach of duty arose outside and irrespective of the Subcontract. . . ." *See id.*

Both parties agree that a plaintiff may not recover both for fraud and for breach of contract for the same alleged injury. *See Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.,* 256 Va. 553, 507 S.E.2d 344 (1998). "In determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *See id.* at 558. Plaintiff admits that its allegations of fraud are based upon Defendant CBC's intent not to fulfill its contractual obligations; as such, any duty apparent between the parties arose merely from the existence of a contract and not by virtue of their relationship. Without the contract, there would be no cause of action. *See Oleyar v. Kerr, Trustee,* 217 Va. 88, 90, 225 S.E.2d 398, 399-400 (1976). As such, Plaintiff may not assert a claim for fraud arising out of the subcontract, and Defendants' Demurrer to the fraud count is sustained.

*Conversion*

In *Universal C.I.T. Credit Corp. v. Kaplan,* 198 Va. 67, 92 S.E.2d 359 (1956), the Virginia Supreme Court explained that the tort of conversion encompasses "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *Id.* at 75, 92 S.E.2d at 365. "In general, a cause of action for conversion applies only to tangible property." *United Leasing Corp. v. Thrift Ins. Corp.,* 247 Va. 299, 305, 440 S.E.2d 902 (1994).

In this case, there is no claim that Defendants are in possession of any specific property that Plaintiff has an immediate right of possession over. The crux of Plaintiff's complaint involves a dispute over being paid a sum of money in exchange for work performed. Should Plaintiff prevail on the merits of the suit, there is no specific piece of property that he would be entitled to; any form of payment would satisfy the judgment and could properly come from any source whatever. In essence, a dollar is a dollar as far as Plaintiff's

judgment is concerned, and no specific dollar is sought as being converted. Because Plaintiff does not allege that a specific, tangible item is being wrongfully held by Defendants, the demurrer to Plaintiff's conversion claim is sustained.

*Punitive Damages and Attorneys Fees*

Because Plaintiff's fraud and conversion claims are dismissed, Plaintiff is left to assert only those claims arising out of his breach of contract allegations. Since punitive damages and attorney's fees are not recoverable in breach of contract actions, Defendants' demurrer to Plaintiff's corresponding claim is sustained. *See Kamlar Corp. v. Haley*, 224 Va. 699, 299 S.E.2d 514 (1983).