COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
          Bray, Annunziata, Bumgardner, Frank, Humphreys,
          Clements and Agee
Argued at Richmond, Virginia


M. MORGAN CHERRY & ASSOCIATES, LTD.
                                            OPINION BY
v.   Record No. 2854-00-4        JUDGE ROSEMARIE ANNUNZIATA
                                           AUGUST 20, 2002
NATALIE W. CHERRY


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie M. Alden, Judge

Vernon W. Johnson, III (Jackson & Campbell,
P.C., on briefs), for appellant.

Michael C. Miller (Marcia M. Maddox Law
Office of Maddox, Cole & Miller, P.C., on
brief), for appellee.


This matter comes before the Court on a rehearing en banc

from a decision of a divided panel rendered January 22, 2002.

The panel affirmed the trial court's award of a judgment against

M. Morgan Cherry & Associates (MMCA) in the amount of $9,900.

The judgment was based on a violation of a court order, issued

pursuant to Code § 20-79.1, directing MMCA to withhold and pay

out of the disposable income of M. Morgan Cherry, an employee

and shareholder of MMCA, a deducted amount for spousal support

due the appellee, Natalie W. Cherry.  The trial court found that

MMCA had violated the income deduction order and entered judgment against it. For the following reasons, we affirm.

BACKGROUND

Under familiar principles, we state the evidence in the light most favorable to Ms. Cherry, the party prevailing below. Richardson v. Richardson, 30 Va. App. 341, 349, 516 S.E.2d 726, 730 (1999). MMCA is a Virginia corporation that provides private investigation services. Mr. Cherry owns 60% of the outstanding stock of MMCA. MMCA's other two shareholders, Robert M. Puglisi and Thomas G. Byrne, each own 20% of the stock. Puglisi and Byrne are not related to Mr. Cherry.

Ms. Cherry filed her bill of complaint for divorce against Mr. Cherry on January 31, 2000. The parties entered into a Consent Pendente Lite Support Order on May 8, 2000, which provided that Mr. Cherry would pay Ms. Cherry $3,300 per month in spousal support. Mr. Cherry ceased making spousal support payments in July 2000. On July 17, 2000, Mr. Cherry instructed MMCA to stop paying him a salary and they complied.

On August 28, 2000, at Ms. Cherry's request, the court issued an income deduction order pursuant to Code § 20-79.1. The income deduction order identified MMCA as the "employer" and required MMCA to withhold and pay out of the disposable income of Mr. Cherry a deducted amount for spousal support for Ms. Cherry. It also provided that MMCA "shall be liable for payments which [it] fails to withhold or mail as specified in

- 2 -

the Order." The amount of the deduction was set at $3,300 per month, subject to a limitation based on Mr. Cherry's disposable income. Thus, depending upon the amount of disposable income it paid to Mr. Cherry, MMCA would be obligated to make payments of up to $3,300 per month.

On September 22, 2000, Ms. Cherry filed a motion for satisfaction of judgment by defendant's interest in his corporate entities. By that motion, Ms. Cherry asked the court to require MMCA to directly satisfy, in whole or in part, judgments and other obligations of Mr. Cherry in the case. The court denied the motion without prejudice, holding that it could not be heard on an abbreviated motions day.

Ms. Cherry proceeded to an equitable distribution hearing before the trial court on October 31, 2000. MMCA filed a motion to intervene to protect itself against discovery requests served by Ms. Cherry. It claimed that Ms. Cherry sought privileged and confidential information relating to the company. The trial court denied the motion, and MMCA did not participate in the hearing. As part of the equitable distribution hearing, Ms. Cherry again asked that the court require MMCA to pay judgments entered against Mr. Cherry. The court again denied the request without prejudice, holding that Ms. Cherry had to file a separate lawsuit to pursue the relief sought.

At the hearing, the trial court also sua sponte issued a rule to show cause why MMCA should not be held in contempt for

- 3 -

its failure to comply with the income deduction order. The trial court set a return date of November 3, 2000 for the rule to show cause hearing.

The trial court conducted the show cause hearing on November 3 and November 17. The evidence proved that Mr. Cherry had instructed MMCA to stop paying a salary to him on July 17, 2000 and that MMCA complied, but that Mr. Cherry continued as an employee of MMCA.

Ms. Cherry contended that MMCA had a continuing liability to Mr. Cherry. She relied, in part, on the testimony of Puglisi, MMCA's sole witness. Puglisi acknowledged that MMCA had approved the response to the income deduction order filed on September 1, 2000, which stated that "Mr. Cherry instructed [MMCA] not to make any further payments of salary or any other amounts to him. Mr. Cherry is still an employee of [MMCA]." Further, Puglisi testified that Mr. Cherry is co-founder and majority shareholder of the company, that some clients choose MMCA based on Mr. Cherry's reputation, that Mr. Cherry may have clients that he solicits, and that he has marketing responsibilities.

Counsel for Ms. Cherry indicated three times throughout the show cause proceeding that she was basing her argument, in part, on the testimony of Ms. Cherry from the equitable distribution

- 4 -

hearing.[1] No transcript of evidence from the equitable distribution hearing was introduced, however. MMCA did not object to the references by counsel and did not produce the evidence referred to by Ms. Cherry's counsel on appeal.

Ostensibly treating the referenced evidence from the prior hearing as before her, the trial court judge specifically stated that, in entering judgment against MMCA, she was relying upon it, in part, including, inter alia, the evidence regarding "the nature of [MMCA's] business, the kind of work that it does, its ownership, its structure, and . . . the way Mr. Cherry operates with respect to his multiple identities, passports, et. cetera." MMCA failed to object, on due process or other grounds, to the court's consideration of this evidence.

The trial judge concluded that "MMCA continues to be liable to Max Cherry for his salary whether MMCA is paying it or not . . . and inasmuch as it's an obligation that MMCA owes to Mr. Cherry, it's an obligation that MMCA under this Court's income

---

[1] First, on November 3, she noted Ms. Cherry's testimony that she had not received support from either Mr. Cherry or MMCA since June 2000. Again on that date, counsel referred to Ms. Cherry's testimony regarding the methods by which Mr. Cherry generates profits for MMCA: "[Mr. Cherry] goes around the United States and the world and he gets business and then he has his network of subcontractors do the business. They don't need billing from Mr. Cherry." She also stated that MMCA did not controvert Ms. Cherry's testimony. Finally, at the second session of the hearing on November 17, Ms. Cherry's counsel reminded the court that Ms. Cherry had testified at the equitable distribution hearing that Mr. Cherry controlled MMCA. Ms. Cherry did not testify at the show cause hearing.

deduction order owes to Ms. Cherry."  She did not find MMCA in contempt, but entered judgment against MMCA for $9,900, representing the amount the court deemed due from MMCA to Ms. Cherry under the income deduction order for the months of September, October, and November 2000.  MMCA objected to the amount of the judgment, but registered no other objections.

MMCA now appeals the trial court's entry of judgment against it.

## ANALYSIS

### I.

### Threshold Issues

Although Ms. Cherry presented three threshold issues for our consideration, one of them is moot.[2]  We address the remaining issues.  First, Ms. Cherry maintains that we lack subject matter jurisdiction to hear MMCA's claims.  We disagree. We have jurisdiction pursuant to Code § 17.1-405, which states, "[a]ny aggrieved party may appeal to the Court of Appeals from . . . [a]ny . . . domestic relations matter arising under Title 16.1 or Title 20."  Because the court issued the income deduction order pursuant to Code § 20-79.1, this case involves a

---

[2] Our order dated December 22, 2000 mooted MMCA's appeal of the trial court's December 1, 2000 order denying a supersedeas bond.  We suspended execution of the judgment, and a bond was issued pending appeal.

domestic relations matter arising under Title 20 and comes within our jurisdiction.

Second, Ms. Cherry contends that MMCA's appeal of the trial court's denial of its motion to intervene in the divorce case is untimely. We need not address this issue because we find MMCA did not appeal the denial of its motion to intervene.

## II.

### MMCA's Appeal

MMCA contends that: (1) the trial court improperly considered evidence from an earlier proceeding; (2) the evidence was insufficient as a matter of law to support the trial court's finding that MMCA owed a debt to Mr. Cherry; (3) the trial court violated MMCA's right to due process of law; and (4) the trial court lacked authority to enter judgment on a rule to show cause. We consider appellant's allegations seriatim.

### A. Consideration of Evidence from Previous Proceeding

MMCA alleges for the first time on appeal that the trial court improperly relied on evidence from the equitable distribution hearing in reaching its decision to enter judgment against MMCA. Therefore, this claim is procedurally barred. Rule 5A:18; see also Hansel v. Commonwealth, 118 Va. 803, 808, 88 S.E. 166, 167 (1916); cf. Hess v. Commonwealth, 17 Va. App. 738, 739-44, 441 S.E.2d 29, 30-34 (1994).

At trial, MMCA did not object on due process or other grounds to the court's consideration of the evidence when Ms.

Cherry directed the judge to testimony from the earlier hearing or when the trial judge stated she took it into account. Nor did MMCA properly raise the objection in closing by stating that "on the evidence that's before Your Honor here today, the rule to show cause should be dismissed." See Fortune v. Commonwealth, 14 Va. App. 225, 228, 416 S.E.2d 25, 27 (1992) (holding that a closing argument satisfies the contemporaneous objection rule only where the trial court "considered the issue" and "had an opportunity to take corrective action").

Finally, MMCA's failure to object does not fit within either the "good cause" or "ends of justice" exceptions to the rule. First, because MMCA failed to utilize several opportunities to make its objection,[3] we find no "good cause" for MMCA's failure to raise the issue at trial. See Luck v. Commonwealth, 32 Va. App. 827, 834, 531 S.E.2d 41, 44 (2000) (holding that where "the defendant had the opportunity to object but elected not to do so," his claim is not preserved).

Second, the "ends of justice" do not require us to consider MMCA's claim that the trial judge improperly considered evidence from the equitable distribution proceeding because MMCA did not present a record on appeal that affirmatively demonstrates that such consideration "clearly had an effect upon the outcome of

---

[3] Before making its ruling, the trial court described the evidence from the equitable distribution hearing she considered, then asked the plaintiff's counsel to prepare a judgment order in her favor. In addition, opposing counsel made three

the case." Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989); see Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (citing Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987))); see also Jones v. Commonwealth, 29 Va. App. 503, 520-21, 513 S.E.2d 431, 440 (1999). Without the evidence MMCA claimed the judge erroneously considered, we cannot perform the necessary calculus to determine whether the error was clear, substantial and material. See Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185, 409 S.E.2d 16, 20 (1991).

Because MMCA failed, without good cause, to object to the court's use of evidence from the prior proceeding and has not proven that a manifest injustice resulted, we will not consider the merits of this argument on appeal.

### B. Sufficiency of the Evidence

MMCA also contends the trial court erred in its finding that MMCA owed a debt to Mr. Cherry. Our standard of review requires that we presume the judgment of the trial court to be correct, Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992), and that we sustain its finding unless it is plainly

---

references to it in support of her argument.

wrong or without evidence to support it.  Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986).

Furthermore, MMCA bears the burden of proving that the evidence did not justify the conclusion that MMCA owed a debt to Mr. Cherry, including presentation of a record that demonstrates that the decision of the trial court was clearly erroneous or unsupported by the record.  Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961); Jenkins, 12 Va. App. at 1185, 409 S.E.2d at 20; Steinberg v. Steinberg, 11 Va. App. 323, 326, 398 S.E.2d 507, 508 (1990); Kaufman v. Kaufman, 7 Va. App. 488, 499, 375 S.E.2d 374, 380 (1988).  "If the appellant fails to do this, the judgment will be affirmed."  Justis, 202 Va. at 632, 119 S.E.2d at 257.  The appellant must present to the appellate court all the evidence considered by the trial judge, including evidence that may have been considered improperly but without objection.  See Commonwealth v. Jenkins, 255 Va. 516, 522, 499 S.E.2d 263, 266 (1998) ("Since the handwritten notation on the discharge summary was received without objection as evidence in the case, the Court of Appeals erred in disregarding that portion of the exhibit in reviewing the sufficiency of the evidence.").

Because MMCA has not met its burden of producing the challenged evidence for our review on appeal, we cannot say the evidence before the trial judge was insufficient as a matter of

law to support her finding.  Therefore, we affirm her decision on this issue.

## C.  Due Process[4]

We find no merit in MMCA's claim that the trial court violated its due process rights because it lacked reasonable notice that its financial interests were at stake at the show cause hearing.  The trial court twice notified MMCA that it could issue a money judgment against it.  First, the trial court issued an income deduction order, which, pursuant to Code § 20-79.3(11), specifically provided that MMCA "shall be liable for payments which [it] fails to withhold or mail."  Second, we have previously held that a trial court may issue a money judgment on a rule to show cause.  See Shoup v. Shoup, 31 Va. App. 621, 627-28, 525 S.E.2d 61, 64-65 (2000).  MMCA was properly served with the rule to show cause and was chargeable with the knowledge that, under Virginia law, its financial interests were at stake.

Likewise, we find no merit in MMCA's contention that the trial court, at the show cause hearing, improperly denied its right to a jury trial and its right to cross-examine evidence

---

[4]As discussed in Section I of this opinion, we do not find that MMCA appealed the denial of its motion to intervene. Therefore, we do not address the claim that the denial violated due process.

- 11 -

against it.[5]  It is uncontested that MMCA participated as a party in the show cause hearing.  At no time during the hearing did MMCA request, or make an effort to implement its right, to cross-examine or a jury trial.

### D.  Entry of Judgment on Rule to Show Cause

MMCA also argued, for the first time in its reply brief, that the trial court had no legal basis to enter judgment against it to enforce the terms of the income deduction order in the context of a contempt hearing on the rule to show cause. Because this issue was not presented below, we do not consider it on appeal.  Rule 5A:18.

For the foregoing reasons, we affirm the trial court's decision.

Affirmed.

---

[5] For reasons discussed in Section II(A) of this opinion, we do not address MMCA's argument that it could not cross-examine the evidence from the equitable distribution hearing.

Benton, J., with whom Fitzpatrick, C.J., Bray, Bumgardner, and Agee, JJ., join, dissenting.

M. Morgan Cherry & Associates, Ltd., a Virginia corporation, was not a party to the divorce proceedings between Natalie W. Cherry and her husband, Max Morgan Cherry, III. Yet, in November 2000 hearings to determine whether the corporation violated an income deduction order, which was entered in the divorce proceeding, the trial judge judicially recognized facts that apparently were proved in the equitable distribution phase of the divorce proceeding. Based substantially on those facts, the judge entered a money judgment against the corporation for violating the income deduction order. I would hold that the judge committed reversible error.

> "The general rule is that the court will
> not travel outside the record of the case
> before it in order to take notice of the
> proceedings in another case, even between
> the same parties and in the same court,
> unless the proceedings are put in evidence.
> The reason for the rule is that the decision
> of a cause must depend upon the evidence
> introduced. If the courts should recognize
> judicially facts adjudicated in another
> case, it makes those facts, though
> unsupported by evidence in the case at hand,
> conclusive against the opposing party; while
> if they had been properly introduced they
> might have been met and overcome by him."

Bernau v. Nealon, 219 Va. 1039, 1043, 254 S.E.2d 82, 85 (1979) (citation omitted).

The record establishes that the managing principal officer, who is one of the three shareholders of the corporation, was the

sole witness at the hearing from which this appeal arises.  He testified that in February 2000, he had a discussion with the husband about his decreased participation in the corporation's business.  He told the husband "that the drop in his hourly contribution was significantly impacting the company and . . . that it wasn't quite fair that the compensation he was receiving was based on . . . 1997, 1998 involvement."  In July 2000, he again discussed with the husband the lack of justification for paying the husband when "no income [was] coming from [the husband]."  At that time, the husband had only 100 billable hours for all of the year 2000.  Based on those discussions, the husband agreed in July 2000 that the corporation should stop paying his salary.  The corporation did so on July 17.  The managing principal officer testified that the husband, who owns 60% of the corporation's stock, continues to be one of the three shareholders of the corporation and is an inactive, unpaid employee.

In September 2000, seven months after the managing principal officer confronted the husband about his unproductivity, the corporation first received notice of the income deduction order.  The corporation promptly filed in the circuit court its response that it "has made no payments of salary or any other amounts to [husband] since July 17, 2000."  In response to questions from the wife's attorney at the show cause hearing, the managing principal officer was clear that the

husband was not participating in the affairs of the corporation.

He testified as follows:

> Q  And sometimes [the husband] is a director
> of operations and does marketing and
> business management and so forth, too,
> doesn't he?
>
> A  He has, yes, in the past.
>
> Q  And the operations that are the source of
> revenue for [the corporation] are
> investigations, are they not?
>
> A  Yes, sir.
>
> Q  And [the husband] conducts those
> investigations, doesn't he?
>
> A  He has in the past.
>
> Q  And in fact [the husband] is [the
> corporation's] primary investigator, isn't
> he?
>
> A  No, that's not true.
>
>          *   *   *   *   *   *
>
> Q  But nobody has ever compelled him to go
> out and work, have they?
>
> A  We have in the past tried to get him to
>  -- as a matter of fact, this summer, get
> him to work cases for us and he just hasn't
> been able to do it.  I don't know the
> reasons why.  I've retained the
> responsibilities for those matters and Mr.
> Burn has also for those matters.
>
>     It would be difficult to say we could
> force him to do work when he's not
> physically here.  I believe I haven't seen
> him for five months or more.
>
>          *   *   *   *   *   *

Q So he's in charge of marketing and representing the corporation at trade shows and soliciting clients?

A He's not in charge of soliciting clients. He may have clients that he solicits. He has marketing responsibilities as we all do. This is a small company; I don't know if you understand that.

The only way that it functions is the output of all of its parties and when one party doesn't function, it puts more burden on the other parties and that's what the situation is here and that's what led us, you know, to the conclusion that paying him a salary was not justified.

The managing principal officer further testified that the corporation owed no accrued salary to the husband, held no money that was his, and provided to him no other benefits. He testified that the minority owners had no power "to fire" the husband because the husband was the majority stockholder. Their only "options or alternatives were to . . . dissolve or separate [themselves] from the company." He testified that the coming December would be the end of the fiscal year and that decisions would then be made about bonuses. He also testified that the corporation has "never had a dividend." No other witness testified, and no other documentary evidence was presented at the hearing.

In argument to the trial judge at the conclusion of that testimony, the corporation's attorney asserted that "on the evidence that's before your Honor here today, the rule to show cause should be dismissed." The judge took the matter under

advisement for two weeks.  At a later hearing, which consisted

only of further argument by the attorneys, the judge ruled from

the bench.  In pertinent part, she stated the following:

> Well, I recall all the evidence that was
> adduced at the hearing last time, primarily
> through [the managing principal officer],
> but I have also considered the evidence that
> was received during the equitable
> distribution case about [the corporation],
> the nature of the business, the kind of work
> that it does, its ownership, its structure,
> and I also rely upon the evidence that I
> heard during the equitable distribution case
> regarding the way [the husband] operates
> with respect to his multiple identities,
> passports, et. cetera.
>
>     *    *    *    *    *    *
>
> So today, pursuant to the income deduction
> order that was entered by this Court on
> August 28th of 2000, I am entering a
> judgment against [the corporation] in the
> amount of $9,900 for its failure to make
> payments for September 1, October 1, and
> November 1 of the year 2000.

(Emphasis added).  Immediately at the conclusion of the hearing,

the judge entered an "Order Pertaining to Rule Against MMCA,"

which incorporated the judge's "bench ruling" and "awarded a

judgment against [the corporation] in the . . . amount of

$9,900," plus interest, in satisfaction of the income deduction

order.  The corporation's attorney "objected to [the order] on

the grounds stated in open Court and on the record herein."

"[I]t was plain error for [the trial judge] to go outside

the record to find another reason to support [her] decision."

Russell County School Bd. v. Anderson, 238 Va. 372, 385, 384

- 17 -

S.E.2d 598, 605 (1989). Moreover, this is not a case such as Hansel v. Commonwealth, 118 Va. 803, 808, 88 S.E. 166, 167 (1916), where the trial judge "permit[ted] the evidence . . . given in the [other] case . . . to be read in evidence" in this case. See also Luck v. Commonwealth, 32 Va. App. 827, 834, 531 S.E.2d 41, 44 (2000) (noting that the trial judge "made the letter part of the file and the record"). Neither party offered as evidence any matters proved on the record in the equitable distribution phase of the divorce proceeding. Moreover, the corporation was not a party to the divorce proceeding.

Because no matters concerning the equitable distribution proceeding were offered as evidence in the show cause proceeding, the corporation's attorney had no occasion to object. Indeed, after the evidence described above was proved by the testimony of the corporation's managing principal officer, the trial judge entertained "argument" by the attorneys. Although the majority opinion recognizes that references to the extraneous "evidence" first occurred when the wife's attorney, during summation argument, made references to the wife's divorce proceeding testimony, the record clearly establishes that no evidence was then being offered and the only issue before the trial judge concerned the import of the evidence in the show cause proceeding. I believe, therefore, that the corporation's attorney's closing argument adequately preserved for review both the objection to the judge's reliance

- 18 -

on evidence not in the record and the objection to insufficiency of the evidence.  He informed the judge that "on the evidence that's before Your Honor here today" there was no evidence to prove the corporation owed any monetary obligation to husband. In addition, the attorney noted the same objection on the final order.

"The primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials."  Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992). The contemporaneous objection requirement may be satisfied by an attorney's closing argument that touches upon the matter at issue.  Taylor v. Commonwealth, 28 Va. App. 498, 504, 507 S.E.2d 89, 91 (1998); Fortune v. Commonwealth, 14 Va. App. 225, 228, 416 S.E.2d 25, 27 (1992); Harris v. Commonwealth, 13 Va. App. 593, 596, 413 S.E.2d 354, 355-56 (1992).  That was done in this case.  Moreover, the judge, who had tried the divorce case and had denied the corporation's motion to intervene in the divorce case, knew the corporation was not a party to the divorce proceeding.  The attorney's argument, which directed the judge's attention to "the evidence that's before Your Honor here today," clearly put the judge on notice that she was limited to considering "the evidence . . . before" her at the show cause proceeding.  I would hold, therefore, that the attorney

preserved for appeal both the issues of insufficiency of the evidence and the limitation of evidence to that which was contained in the record.

Contrary to the majority opinion's "ends of justice" discussion, I would hold that, in any event, to attain the ends of justice we should consider this issue of the judge's reliance on facts not in evidence. See Rule 5A:18. "'An appellate court may . . . take cognizance of errors though not assigned when they . . . are fundamental.'" Cooper v. Commonwealth, 205 Va. 883, 889, 140 S.E.2d 688, 693 (1963) (citation omitted). The judge's "plain error" deprived the corporation of a fundamental right because the only evidence before the trial judge in this limited proceeding was the uncontradicted testimony of the managing principal officer that the corporation did not owe the husband income, as defined in the income deduction order and by Code § 63.1-250. The evidence before the judge in the November hearings, the only proceeding to which the corporation was a party, did not contain a scintilla of proof concerning the evidence previously given in the equitable distribution phase of the divorce proceeding. Cf. Hansel, 118 Va. at 808, 88 S.E. at 167 (noting that the trial judge permitted the evidence from the other case "to be read in evidence").

Moreover, the corporation had no opportunity to know, challenge, or rebut evidence from the prior hearings that the wife or the judge considered significant. The corporation,

- 20 -

therefore, was denied the essence of due process.  See Goldberg v. Kelly, 397 U.S. 254, 267-71 (1970) (holding that notice and an effective opportunity to defend by confronting and cross-examining adverse witnesses are components of the right to due process); Browning-Ferris Industries v. Kelco Disposal, 492 U.S. 257, 285 (1989) (holding that "a corporation is entitled to due process . . . of law").  "The denial of due process involves the denial of a fundamental constitutional right and falls within the ambit of Rule 5A:18 to attain the ends of justice." Allen v. Commonwealth, 36 Va. App. 334, 338-39, 549 S.E.2d 652, 654 (2001).  Applying these principles, we may invoke the ends of justice exception in a case such as here, where the due process violation results in a miscarriage of justice.  See id. at 339, 549 S.E.2d at 654.  A miscarriage of justice is apparent in this case because the evidence properly before the judge affirmatively proved that the corporation owed no income or other monetary obligation to the husband.

I would hold further that the judge's "plain error" in considering evidence outside the record was not harmless.  The trial judge generally stated that she also was relying on evidence she heard "during the equitable distribution case, about [the corporation], the nature of the business, the kind of work . . . it does, its ownership, its structure, and . . . [about] the way [the husband] operates with respect to his multiple identities, passports, et. cetera."  This error was

- 21 -

significant because it impacted upon the lack of credit the judge gave to the unimpeached testimony of the corporation's managing officer.

> While a jury, or a judge trying a case without a jury, are the judges of the weight of the testimony and the credibility of witnesses, they may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with the facts appearing in the record, even though such witnesses are interested in the outcome of the case.
>
> Here [the] evidence was uncontradicted; it was not inherently incredible; and it constituted the only facts appearing in the record. Even . . . [if] the trial judge did not believe [the] testimony, [her] mere belief or speculation is not sufficient to disregard the evidence.

Hodge v. American Family Life, 213 Va. 30, 31-32, 189 S.E.2d 351, 353 (1972). See also Cheatham v. Gregory, 227 Va. 1, 4-5, 313 S.E.2d 368, 370 (1984). The judge's decision to enter the judgment was substantially swayed by her erroneous consideration of facts not in evidence.

Additionally, the majority opinion's sufficiency analysis operates upon the faulty premises that an argument by an attorney to the judge concerning the incidents of the case and the judge's notice of facts adjudicated in another proceeding constitute evidence. Those premises are contrary to well established principles. See Bernau, 219 Va. at 1041, 254 S.E.2d at 84 (holding that "[i]ndividual and extrajudicial knowledge on

the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record"); Waye v. Commonwealth, 219 Va. 683, 691, 251 S.E.2d 202, 206 (1979) (approving the judge's instruction to "the jury that the [attorney's] statement was not evidence"); Cook v. Hayden, 183 Va. 203, 226, 31 S.E.2d 625, 634 (1944) (holding "that the statements [of the attorney concerning facts to be proved] were not evidence"); Cummings v. Commonwealth, 24 Va. App. 248, 251-52, 481 S.E.2d 493, 494 (1997) (holding that the attorney's discussion with the judge about facts to be proved is not evidence).  Relying upon these faulty premises, the majority misapplies Commonwealth v. Jenkins, 255 Va. 516, 499 S.E.2d 263 (1998), and misconstrues its holding as requiring an appellate court to accept all extraneous matters "considered" by the trial judge.  In Jenkins, the Supreme Court held that in reviewing an appeal for sufficiency of the evidence, "the reviewing court must consider all evidence properly admitted at trial."  255 Va. at 522, 499 S.E.2d at 266 (emphasis added).

The facts of this case reveal that, after the evidence had been established at an evidentiary hearing, the wife's attorney referred during summation argument to testimony apparently made at the earlier equitable distribution phase of the divorce proceeding to which the corporation was not a party.  Neither the attorney's statements nor the judge's bench remarks are

- 23 -

evidence. Moreover, the wife's attorney neither proffered as evidence nor read into evidence the record from the equitable distribution phase of the divorce proceeding upon which the trial judge relied. Although it is the responsibility of the corporation, as appellant, to present this Court with a full record, that responsibility does not include presenting documents not in evidence. See Bernau, 219 Va. at 1043, 254 S.E.2d at 85. The record before us clearly establishes that evidence from the equitable distribution proceeding in the divorce case was not admitted into the record of this hearing. Accordingly, on review for sufficiency of the evidence, the majority opinion incorrectly concludes that the record on appeal includes "evidence [from the equitable distribution hearing] referred to by [the wife's] counsel" in argument to the trial judge. I would hold that Jenkins does not require us to consider in a sufficiency analysis that which was not offered and accepted into evidence. Simply put, arguments made by the wife's attorney and statements by the judge in a ruling from the bench are not evidence in the case.

For these reasons, I would hold that the trial judge erred in judicially noticing facts which were proved in a proceeding where the corporation was not a party and which were not introduced as evidence in the proceeding at bar. This error substantially affected the trial court's ruling. I would also hold that the evidence which was properly admitted was

- 24 -

uncontradicted and insufficient, as a matter of law, to support the judge's rulings.  See Cheatham, 227 Va. at 4-5, 313 S.E.2d at 370.  I would, therefore, reverse the judgment.

Tuesday          26th

March, 2002.

M. Morgan Cherry and Associates, LTD.,                    Appellant,

against       Record No. 2854-00-4
              Circuit Court No. CH-164825

Natalie W. Cherry,                                        Appellee.

Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
Bray, Annunziata, Bumgardner, Frank, Humphreys, Clements and Agee

On February 5, 2002 came the appellant, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on January 22, 2002, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on January 22, 2002 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35.  The appellant shall attach as an addendum to the opening brief upon rehearing en banc a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the

appellant shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Hodges
Argued at Alexandria, Virginia


M. MORGAN CHERRY & ASSOCIATES, LTD.
                                           OPINION BY
v.    Record No. 2854-00-4          JUDGE ROSEMARIE ANNUNZIATA
                                         JANUARY 22, 2002
NATALIE W. CHERRY


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Leslie M. Alden, Judge

        Vernon W. Johnson, III (James A. Allen;
        Jackson & Campbell, P.C., on briefs), for
        appellant.

        Michael Miller (Marcia M. Maddox; Cynthia A.
        King; Law Office of Maddox & Cole, P.C., on
        brief), for appellee.


     The appellant, M. Morgan Cherry & Associates, Ltd. (MMCA),

appeals the award of a judgment against it in the amount of

$9,900.  The judgment stemmed from an alleged violation of a

court order, issued pursuant to Code § 20-79.1, directing MMCA

to withhold and pay out of the disposable income of M. Morgan

Cherry, an employee and shareholder of MMCA, a deducted amount

for spousal support due the appellee, Natalie W. Cherry.  The

trial court found that MMCA had violated the income deduction

order and entered judgment against it.  For the following

reasons, we affirm.

Under familiar principles, we state the evidence in the light most favorable to Ms. Cherry, the party prevailing below. Richardson v. Richardson, 30 Va. App. 341, 349, 516 S.E.2d 726, 730 (1999). MMCA is a Virginia corporation that provides private investigation services. Mr. Cherry owns 60% of the outstanding stock of MMCA. MMCA's other two shareholders, Robert M. Puglisi and Thomas G. Byrne, each own 20% of the stock. Puglisi and Byrne are not related to Mr. Cherry.

Ms. Cherry filed her bill of complaint for divorce against Mr. Cherry on January 31, 2000. The parties entered into a Consent Pendente Lite Support Order on May 8, 2000, which provided that Mr. Cherry would pay Ms. Cherry $3,300 per month in spousal support. Mr. Cherry ceased making spousal support payments in July 2000. On July 17, 2000, Mr. Cherry instructed MMCA to stop paying him a salary and they complied.

On August 28, 2000, at Ms. Cherry's request, the court issued an income deduction order pursuant to Code § 20-79.1. The income deduction order identified MMCA as the "employer" and required MMCA to withhold and pay out of the disposable income of Mr. Cherry a deducted amount for spousal support for Ms. Cherry. It also provided that MMCA "shall be liable for payments which [it] fails to withhold or mail as specified in the Order." The amount of the deduction was set at $3,300 per month, subject to a limitation based on Mr. Cherry's disposable

income.  Thus, depending upon the amount of disposable income it paid to Mr. Cherry, MMCA would be obligated to make payments of up to $3,300 per month.

On September 22, 2000, Ms. Cherry filed a motion for satisfaction of judgment by defendant's interest in his corporate entities.  By that motion, Ms. Cherry asked the court to require MMCA to directly satisfy, in whole or in part, judgments and other obligations of Mr. Cherry in the case. The court denied the motion without prejudice, holding that it could not be heard on an abbreviated motions day.

Ms. Cherry proceeded to an equitable distribution hearing before the trial court on October 31, 2000.  MMCA filed a motion to intervene to protect itself against discovery requests served by Ms. Cherry.  It claimed that Ms. Cherry sought privileged and confidential information relating to the company.  The trial court denied the motion, and MMCA did not participate in the hearing.  As part of the equitable distribution hearing, Ms. Cherry again asked that the court require MMCA to pay judgments entered against Mr. Cherry.  The court again denied the request without prejudice, holding that Ms. Cherry had to file a separate lawsuit to pursue the relief sought.

At the hearing, the trial court also sua sponte issued a rule to show cause why MMCA should not be held in contempt for its failure to comply with the income deduction order.  The

trial court set a return date of November 3, 2000 for the rule to show cause hearing.

The trial court conducted the show cause hearing on November 3 and November 17. The evidence proved that Mr. Cherry had instructed MMCA to stop paying a salary to him on July 17, 2000 and that MMCA complied, but that Mr. Cherry continued as an employee of MMCA.

Ms. Cherry contended that MMCA had a continuing liability to Mr. Cherry. She relied, in part, on the testimony of Puglisi, MMCA's sole witness. Puglisi acknowledged that MMCA had approved the response to the income deduction order filed on September 1, 2000, which stated that "Mr. Cherry instructed [MMCA] not to make any further payments of salary or any other amounts to him. Mr. Cherry is still an employee of [MMCA]." Further, Puglisi testified that Mr. Cherry is co-founder and majority shareholder of the company, that some clients choose MMCA based on Mr. Cherry's reputation, that Mr. Cherry may have clients that he solicits, and that he has marketing responsibilities.

Counsel for Ms. Cherry indicated three times throughout the show cause proceeding that she was basing her argument, in part,

on the testimony of Ms. Cherry from the equitable distribution hearing.[6]  No transcript of evidence from the equitable distribution hearing was introduced, however.  MMCA did not object to the references by counsel and did not produce the evidence referred to by Ms. Cherry's counsel on appeal.

Ostensibly treating the referenced evidence from the prior hearing as before her, the trial court judge specifically stated that, in entering judgment against MMCA, she was relying upon it, including, inter alia, the evidence regarding "the nature of [MMCA's] business, the kind of work that it does, its ownership, its structure, and . . . the way Mr. Cherry operates with respect to his multiple identities, passports, et. cetera."  MMCA failed to object, on due process or other grounds, to the court's consideration of this evidence.

The trial judge concluded that "MMCA continues to be liable to Max Cherry for his salary whether MMCA is paying it or not

---

[6] First, on November 3, she noted Ms. Cherry's testimony that she had not received support from either Mr. Cherry or MMCA since June 2000.  Again on that date, counsel referred to Ms. Cherry's testimony regarding the methods by which Mr. Cherry generates profits for MMCA:  "[Mr. Cherry] goes around the United States and the world and he gets business and then he has his network of subcontractors do the business.  They don't need billing from Mr. Cherry."  She also stated that MMCA did not controvert Ms. Cherry's testimony.  Finally, at the second session of the hearing on November 17, Ms. Cherry's counsel reminded the court that Ms. Cherry had testified at the equitable distribution hearing that Mr. Cherry controlled MMCA.  Ms. Cherry did not testify at the show cause hearing.

. . . and inasmuch as it's an obligation that MMCA owes to Mr. Cherry, it's an obligation that MMCA under this Court's income deduction order owes to Ms. Cherry."

The trial judge did not find MMCA in contempt, but entered judgment against MMCA for $9,900, representing the amount the court deemed due from MMCA to Ms. Cherry under the income deduction order for the months of September, October, and November 2000. MMCA objected to the amount of the judgment.

Thereafter, the trial court refused to allow MMCA to post a supersedeas bond. We reversed that ruling on December 22, 2000, and an appropriate supersedeas bond was set and posted by MMCA.

MMCA now appeals the trial court's entry of judgment against it.

ANALYSIS

I.

Threshold Issues

Although Ms. Cherry presented three threshold issues for our consideration, one of them is moot.[7] We address the remaining issues. First, Ms. Cherry maintains that we lack subject matter jurisdiction to hear MMCA's claims. We disagree. We find that we have jurisdiction pursuant to Code § 17.1-405,

_____

[7] Our order dated December 22, 2000 mooted MMCA's appeal of the trial court's December 1, 2000 order denying a supersedeas bond. We suspended execution of the judgment, and a bond was issued pending appeal.

which states, "Any aggrieved party may appeal to the Court of Appeals from . . . [a]ny . . . domestic relations matter arising under Title 16.1 or Title 20." The court issued the income deduction order pursuant to Code § 20-79.1. Therefore, this appeal involves a domestic relations matter arising under Title 20 and comes within our jurisdiction.

Second, Ms. Cherry contends that, to the extent MMCA attempts to appeal the trial court's denial of its motion to intervene in the divorce case, the appeal is untimely. We need not address this issue because we find MMCA did not appeal the denial of its motion to intervene.

MMCA couches the question as one involving a violation of its due process rights, stating, "MMCA's rights were violated in that it was denied the opportunity to cross-examine the evidence received against it [in the equitable distribution hearing]." However, MMCA moved to intervene for the limited purpose of defending itself against certain discovery requests by Ms. Cherry in the divorce proceeding.[8] It did not seek to intervene in the evidentiary hearing on equitable distribution. Thus, had the court granted MMCA's motion to intervene in the divorce proceeding, its participation would have been limited to discovery issues, i.e. the relief requested in its motion. See

---

[8] In its discretion, the trial court denied MMCA's motion to intervene because, inter alia, none of the discovery was directed to MMCA.

- 34 -

*Johnson v. Buzzard Island Shooting Club, Inc.*, 232 Va. 32, 37, 348 S.E.2d 220, 223 (1986) (holding that trial court may not grant relief to a party inconsistent with the case alleged in the party's pleading); cf. Rule 2:15 (referring to one who intervenes as a "party" to the proceeding and motions to intervene as a "pleading" to intervene and providing that motions to intervene are governed by the Rules applicable to all pleadings); see also *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980) (permitting MCI to intervene for the limited purpose of appealing discovery order, as requested in motion to intervene); *Sackman v. Liggett Group*, 167 F.R.D. 6, 23 (E.D.N.Y. 1996) (limiting intervention to issue of whether certain documents are discoverable, as requested in motion to intervene); *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 758 A.2d 916, 927 (Conn. 2000) (granting "intervention for the unique purpose of contesting the disclosure of private, confidential files and issues relating to this interest," as requested in motion to intervene). It would not have had the opportunity to cross-examine evidence tending to prove that it owed a debt to Mr. Cherry. Thus, MMCA waived any due process right to cross-examine the evidence at the equitable distribution hearing.

In short, because MMCA never sought to intervene in the evidentiary hearing, its due process argument that it was deprived of its right to cross-examine evidence does not raise

the denial of its motion to intervene on appeal and the issue is not before us.

## II.

### MMCA's Appeal

MMCA contends on appeal that: (1) the trial court improperly considered evidence from an earlier proceeding; (2) the evidence was insufficient as a matter of law to support the trial court's finding that MMCA owed a debt to Mr. Cherry; (3) the trial court violated MMCA's right to due process of law; and (4) the trial court lacked authority to enter judgment on a rule to show cause. We consider appellant's allegations seriatim and find each to be without merit.

### A. Consideration of Evidence from Previous Proceeding

MMCA alleges for the first time on appeal that the trial court improperly relied on evidence from the equitable distribution hearing in reaching its decision to enter judgment against MMCA. We find this claim procedurally barred. See Rule 5A:18 ("[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice"); see also Hansel v. Commonwealth, 118 Va. 803, 808, 88 S.E. 166, 167 (1916) (declining to reach the merits of defendant's objection, not preserved below, to the reading into evidence of the stenographer's report from defendant's civil

case at his criminal trial); cf. Hess v. Commonwealth, 17 Va. App. 738, 739-44, 441 S.E.2d 29, 30-34 (1994) (considering the merits of appellant's assignment of error that trial judge based his finding on evidence from an earlier proceeding, where defense counsel specifically objected to the consideration of the evidence before the trial court).

MMCA did not object on due process or other grounds to the trial judge's consideration of the evidence when Ms. Cherry directed the judge to testimony from the earlier hearing or when the trial judge stated she took it into account.  Nor did MMCA properly raise the objection in closing by stating that "on the evidence that's before Your Honor here today, the rule to show cause should be dismissed."

While a closing argument may satisfy the contemporaneous objection rule, not all references are sufficient.

> If a closing argument adequately advises the
> trial court of the defendant's position and
> if it is clear that the trial court
> considered the issue and had an opportunity
> to take corrective action, the
> contemporaneous objection rule is satisfied.

Fortune v. Commonwealth, 14 Va. App. 225, 228, 416 S.E.2d 25, 27 (1992) (citing Campbell v. Commonwealth, 12 Va. App. 476, 478, 405 S.E.2d 1, 2 (1991) (en banc)).  In the present case, MMCA's closing statement failed to alert the judge to its claim that she erroneously considered evidence from an earlier proceeding. Indeed, its reference to the evidence "before [her] Honor"

- 37 -

necessarily encompassed the evidence from the earlier hearing, as no objection to its consideration had been raised. Therefore, the court never "considered the issue" or "had an opportunity to take corrective action," as required by our decision in Fortune.  14 Va. App. at 228, 416 S.E.2d at 27.  As such, counsel's closing argument failed to satisfy the contemporaneous objection rule.

Finally, we find that MMCA's failure to object does not fit within either the "good cause" or "ends of justice" exceptions to the rule.  The "good cause" exception relates to the reasons an objection was not stated at the time of the ruling, F.E. v. G.F.M., 35 Va. App. 648, 659, 547 S.E.2d 531, 536 (2001) (en banc) (citations omitted), and is thereby analogous to the grounds underlying the absence of an "opportunity to object" exception to the contemporaneous objection requirement. Campbell v. Commonwealth, 14 Va. App. 988, 996, 421 S.E.2d 652, 656 (1992) (en banc) (Barrow, J., concurring); see Code § 8.01-384(A) ("[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him on motion for a new trial or appeal.").

Our reasoning in Luck v. Commonwealth guides our determination of the absence of "good cause" in the present case.  32 Va. App. 827, 531 S.E.2d 41 (2000).  In sentencing the defendant, the trial judge considered a letter written to the

court from the defendant's aunt.  Id. at 834, 531 S.E.2d at 44.

Although defense counsel was unaware of the letter until the

trial judge noted that he had already considered it, we held

that the claim was not preserved because he did not request an

opportunity to review the letter or make any response to its

contents upon learning of the letter.  We concluded that despite

this late knowledge, "the defendant had the opportunity to

object but elected not to do so."  Id.

MMCA had greater opportunity than Luck to make its

objection.  As in Luck, the trial judge in this case made it

clear she had considered evidence from the equitable

distribution hearing before she finalized her ruling.  She

described the evidence from the equitable distribution hearing

she considered, then asked the plaintiff's counsel to prepare a

judgment order in her favor.  Defense counsel asked to address

the court before the order was entered, and the court permitted

him the opportunity.  MMCA took that opportunity to object only

to the amount of the judgment and declined to mention its claim

that the judge improperly considered certain evidence.  Hence,

"the defendant had the opportunity to object [to the court's

consideration of the evidence from the earlier proceeding,] but

elected not to do so."  Id.

Furthermore, before the trial judge notified MMCA's counsel

that she had considered the evidence, opposing counsel made

three references to it in support of her argument.  At the first

session of the show cause hearing, Ms. Cherry's counsel made two references to testimony from the equitable distribution proceeding.  Two weeks later, at the second session, counsel again referred to the evidence developed at the equitable distribution hearing.  MMCA, therefore, had several opportunities to object to consideration of and reliance upon the evidence both by counsel and the court.  Accordingly, we find no "good cause" for MMCA's failure to raise the issue at trial.

We also find that the "ends of justice" exception does not require us to consider MMCA's claim that the trial judge improperly considered evidence from the equitable distribution proceeding.  The "ends of justice" exception "is narrow and is to be used sparingly."  Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989).  Indeed, "it is a rare case in which, rather than invoke Rule [5A:18], we rely upon the exception and consider an assignment of error not preserved at trial."  Jimenez v. Commonwealth, 241 Va. 244, 249, 402 S.E.2d 678, 680 (1991).  "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred."  Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) (citing Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)); see Herring v. Herring, 33 Va. App. 281, 287, 532 S.E.2d 923, 926 (2000) (noting that only "clear,

- 40 -

substantial and material" errors require the application of the ends of justice exception (citations omitted)); Brown, 8 Va. App. at 131, 380 S.E.2d at 10 (finding that the exception generally requires a determination that "the error clearly had an effect upon the outcome of the case").  These principles govern our application of the "ends of justice" exception in all claims on appeal, including those based on due process grounds. See Jones v. Commonwealth, 29 Va. App. 503, 520-21, 513 S.E.2d 431, 440 (1999) (declining to invoke the exception where appellant did not present his claim that due process required the withdrawal of his guilty pleas to the trial court); Tickle v. Commonwealth, 11 Va. App. 558, 563, 400 S.E.2d 534, 537 (1991) (finding that the ends of justice did not require consideration of whether prosecutor's conduct violated the defendant's due process rights); see also Moore v. Commonwealth, 259 Va. 405, 411 n.4, 527 S.E.2d 415, 419 n.4 (2000) (finding defendant's contention that the Commonwealth's failure to notify juvenile's biological father of initiation of juvenile court proceedings denied him due process barred by Rule 5:25); Overhead Door Co. of Norfolk and Hartford Ins. Co. v. Lewis, 29 Va. App. 52, 61-62, 509 S.E.2d 535, 539-40 (1999) (finding employer's due process objection to inclusion of a commissioner in the resolution of workers' compensation matter who did not hear oral argument barred by Rule 5A:18).

MMCA has not affirmatively demonstrated that the trial judge's consideration of the evidence from the equitable distribution hearing "clearly had an effect upon the outcome of the case." Brown, 8 Va. App. at 131, 380 S.E.2d at 10. Because it failed to produce on appeal the evidence it claimed the judge erroneously considered, we cannot perform the necessary calculus to determine whether the error was clear, substantial and material. See Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185, 409 S.E.2d 16, 20 (1991) (holding that appellant's burden includes providing "a record which [sic] substantiates the claim of error"). While MMCA makes general reference to the type of evidence it contends the trial court improperly considered,[9] without the specific testimony before us, we can only speculate as to whether, and to what extent, the trial judge's consideration of the evidence from the equitable distribution hearing, viewed together with the evidence presented at the show cause hearing, affected her ruling. The

_____

[9] MMCA included opposing counsel's references to Ms. Cherry's testimony from the previous hearing that she had not received support from either Mr. Cherry or MMCA since June 2000, that Mr. Cherry solicits business for MMCA around the world, and that he controls MMCA, as well as the court's statement that, in making her ruling, she "also considered the evidence received during the equitable distribution case about MMCA" and "also rel[ied] upon the evidence that [she] heard during the equitable distribution case regarding . . . Mr. Cherry." We find that "also considering and relying" upon evidence falls short of proving that the improper admission of evidence, in fact, resulted in a different outcome or that a "miscarriage of justice has occurred."

inadequacy of MMCA's reliance on general references is underscored by the fact that the unchallenged evidence from the show cause hearing tends to support the court's ruling, suggesting that the challenged evidence was not material.[10]  In sum, given the record before us, we presume the trial court to be correct.  See Lawrence v. Nelson, 200 Va. 597, 599, 106 S.E.2d 618, 620 (1959) (holding that where appellant has not made the evidence on which a decree is based part of

---

[10] At the show cause hearing, Robert Puglisi, MMCA's sole witness and an MMCA shareholder, acknowledged that MMCA had approved the response to the income deduction order filed on September 1, 2000, which stated that "Mr. Cherry instructed [MMCA] not to make any further payments of salary or any other amounts to him.  Mr. Cherry is still an employee of [MMCA]." The trial judge could reasonably infer that MMCA complied with this instruction to avoid the income deduction order and not, as Mr. Puglisi testified, because Mr. Cherry's contributions to the company became insignificant.  See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989) (holding that the credibility of a witness and the inferences to be drawn from proven facts are matters solely for the fact finder's determination).  Additionally, Puglisi testified that Mr. Cherry is co-founder and majority shareholder of MMCA, that some clients choose MMCA based on Mr. Cherry's reputation, that Mr. Cherry may have clients that he solicits, that he has marketing responsibilities, and that the decision to stop paying salary to Mr. Cherry was made on July 17, 2000, just before the income deduction order became effective.  Based on the foregoing evidence, the trial judge could reasonably infer that Mr. Cherry performed work for MMCA and that MMCA continued to be liable to Mr. Cherry at the time of the income deduction order.  Cf. Po River Water and Sewer Co. v. Indian Acres Club of Thornburg, 255 Va. 108, 114, 295 S.E.2d 478, 482 (1998) ("equity will effect a 'contract implied in law,' requiring one who accepts and receives the services of another to make reasonable compensation for those services").

- 43 -

the record on appeal, it is impossible to pass on certain issues and the decision of the trial court is presumed to be correct).

Because MMCA failed, without good cause, to object to the court's use of evidence from the prior proceeding and has not proven that a manifest injustice resulted, we will not consider the merits of this argument on appeal.

## B. Sufficiency of the Evidence

MMCA also contends that the trial court erred in its finding that MMCA owed a debt to Mr. Cherry. Our standard of review requires that we presume the judgment of the trial court to be correct, Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992), and that we sustain its finding unless it is plainly wrong or without evidence to support it. Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986). MMCA bears the burden of proving that the evidence did not justify the conclusion that MMCA owed a debt to Mr. Cherry. See Carter v. Thornhill, 19 Va. App. 501, 509, 453 S.E.2d 295, 300 (1995). MMCA's burden includes presentation of a record that demonstrates that the decision of the trial court was clearly erroneous or unsupported by the record. Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961); Jenkins, 12 Va. App. at 1185, 409 S.E.2d at 20; Steinberg v. Steinberg, 11 Va. App. 323, 326, 398 S.E.2d 507, 508 (1990); Kaufman v. Kaufman, 7 Va. App. 488, 499, 375 S.E.2d 374, 380 (1988). "If the

appellant fails to do this, the judgment will be affirmed."
Justis, 202 Va. at 632, 119 S.E.2d at 257.

The appellant must present to the appellate court all the evidence considered by the trial judge, including evidence that may have been considered improperly but without objection. The Supreme Court has mandated that we consider such evidence, regardless of our opinion of its trustworthiness, as properly before the trial court in our review of the sufficiency of the evidence. Commonwealth v. Jenkins, 255 Va. 516, 522, 499 S.E.2d 263, 266 (1998) ("Since the handwritten notation on the discharge summary was received without objection as evidence in the case, the Court of Appeals erred in disregarding that portion of the exhibit in reviewing the sufficiency of the evidence."). Therefore, in reviewing the sufficiency of the evidence in this case, we must take into account the evidence from the equitable distribution hearing.

As noted earlier, MMCA has not met its burden of producing the challenged evidence for our review on appeal. Without reviewing that evidence, we cannot say that the evidence before the trial judge was insufficient as a matter of law to support her finding. Therefore, we affirm her decision on this issue.

## C. Due Process[11]

MMCA's claim that the trial court violated its due process rights because it lacked reasonable notice that its financial interests were at stake at the show cause hearing is without merit. The trial court notified MMCA that it could issue a money judgment against it twice. First, the trial court issued an income deduction order, which, pursuant to Code § 20-79.3(11), specifically provided that MMCA "shall be liable for payments which [it] fails to withhold or mail." Second, we have previously held that a trial court may issue a money judgment on a rule to show cause. See Shoup v. Shoup, 31 Va. App. 621, 627-28, 525 S.E.2d 61, 64-65 (2000) (rejecting wife's contention that trial court lacked authority to order wife to pay husband $46,154 plus interest, at a hearing on a rule to show case why she should not be held in contempt for failure to comply with the parties' agreement, where she was not found in contempt). MMCA was properly served with the rule to show cause and was chargeable with the knowledge that under Virginia law its financial interests were at stake.

Likewise, we find no merit in its contention that the trial court, at the show cause hearing, improperly denied its right to a jury trial and its right to cross-examine evidence against

---

[11] As discussed in Section I of this opinion, we do not find that MMCA's due process rights were affected by the denial of its motion to intervene. Therefore, we do not address that

it.[12]  It is uncontested that MMCA participated as a party in the show cause hearing.  At no time during the hearing did MMCA request, or make an effort to implement its rights to cross-examination or demand a jury trial.

### D.  Entry of Judgment on Rule to Show Cause

MMCA also argues, for the first time in its reply brief, that the trial court had no legal basis to enter judgment against it to enforce the terms of the income deduction order in the context of a contempt hearing on the rule to show cause. Because this issue was not presented below,[13] we do not consider it on appeal.

For the foregoing reasons, we affirm the decision of the trial court.

<u>Affirmed</u>.

---

claim here.

[12] MMCA's argument that it could not cross-examine the evidence from the equitable distribution hearing is discussed in Section II(A) of this opinion.

[13] At oral argument, MMCA maintained that it had preserved this objection in its Memorandum of Law dated November 13, 2000. However, that Memorandum argued only that "there is no legal basis for holding MMCA in contempt," because "the specific elements and level of proof required for MMCA to be held in contempt have not been shown."  This claim is manifestly different from the one presented on appeal that the trial court lacked authority to enter a money judgment against MMCA on the basis of a rule to show cause.

Benton, J., dissenting.

M. Morgan Cherry & Associates, Ltd., a Virginia corporation, was not a party to the divorce proceedings between Natalie W. Cherry and her husband, Max Morgan Cherry, III. Yet, in a hearing to determine whether the corporation violated an income deduction order, which was entered in the divorce proceeding, the trial judge judicially recognized facts that apparently were proved in the equitable distribution phase of the divorce proceeding. Based substantially on those facts, the judge entered a money judgment against the corporation for violating the income deduction order. I would hold that the judge committed reversible error.

> "The general rule is that the court will
> not travel outside the record of the case
> before it in order to take notice of the
> proceedings in another case, even between
> the same parties and in the same court,
> unless the proceedings are put in evidence.
> The reason for the rule is that the decision
> of a cause must depend upon the evidence
> introduced. If the courts should recognize
> judicially facts adjudicated in another
> case, it makes those facts, though
> unsupported by evidence in the case at hand,
> conclusive against the opposing party; while
> if they had been properly introduced they
> might have been met and overcome by him."

Bernau v. Nealon, 219 Va. 1039, 1043, 254 S.E.2d 82, 85 (1979) (citation omitted).

The record establishes that the managing principal officer, who is one of the three shareholders of the corporation, was the

sole witness at the hearing from which this appeal arises. He testified that in February 2000, he had a discussion with the husband about his decreased participation in the corporation's business. He told the husband "that the drop in his hourly contribution was significantly impacting the company and . . . that it wasn't quite fair that the compensation he was receiving was based on . . . 1997, 1998 involvement." In July 2000, he again discussed with the husband the lack of justification for paying the husband when "no income [was] coming from [the husband]." At that time, the husband had only 100 billable hours for all of the year 2000. Based on those discussions, the husband agreed in July 2000 that the corporation should stop paying his salary. The corporation did so on July 17. The managing principal officer testified that the husband continues to be one of the three shareholders of the corporation and is an inactive, unpaid employee.

In September 2000, which was seven months after the managing principal officer had a confrontation with the husband about his unproductivity, the corporation first received notice of the income deduction order. The corporation promptly filed in the circuit court its response that it "has made no payments of salary or any other amounts to [husband] since July 17, 2000." In response to questions from the wife's attorney, the managing principal officer was clear that the husband was not

participating in the affairs of the corporation.  He testified

as follows:

> Q  And sometimes [the husband] is a director
> of operations and does marketing and
> business management and so forth, too,
> doesn't he?
>
> A  He has, yes, in the past.
>
> Q  And the operations that are the source of
> revenue for [the corporation] are
> investigations, are they not?
>
> A  Yes, sir.
>
> Q  And [the husband] conducts those
> investigations, doesn't he?
>
> A  He has in the past.
>
> Q  And in fact [the husband] is [the
> corporation's] primary investigator, isn't
> he?
>
> A  No, that's not true.
>
>          *    *    *    *    *    *    *
>
> Q  But nobody has ever compelled him to go
> out and work, have they?
>
> A  We have in the past tried to get him to
>  -- as a matter of fact, this summer, get
> him to work cases for us and he just hasn't
> been able to do it.  I don't know the
> reasons why.  I've retained the
> responsibilities for those matters and Mr.
> Burn has also for those matters.
>
>     It would be difficult to say we could
> force him to do work when he's not
> physically here.  I believe I haven't seen
> him for five months or more.
>
>          *    *    *    *    *    *    *

Q  So he's in charge of marketing and
representing the corporation at trade shows
and soliciting clients?

A  He's not in charge of soliciting clients.
He may have clients that he solicits.  He
has marketing responsibilities as we all do.
This is a small company; I don't know if you
understand that.

The only way that it functions is the
output of all of its parties and when one
party doesn't function, it puts more burden
on the other parties and that's what the
situation is here and that's what led us,
you know, to the conclusion that paying him
a salary was not justified.

The managing principal officer further testified that the

corporation owed no accrued salary to the husband, held no money

that was his, and provided to him no other benefits.  He

testified that the minority owners had no power "to fire" the

husband, who owned a majority of the corporation's stock.  Their

only "options or alternatives were to . . . dissolve or separate

[themselves] from the company."  He testified that the coming

December would be the end of the fiscal year and that decisions

would then be made about bonuses.  He also testified that the

corporation has "never had a dividend."  No other witness

testified, and no other documentary evidence was presented at

the hearing.

In argument to the trial judge at the conclusion of that

testimony, the corporation's attorney asserted that "on the

evidence that's before your Honor here today, the rule to show

cause should be dismissed."  The judge took the matter under

advisement for two weeks.  At a later hearing, which consisted only of further argument by the attorneys, the judge ruled from the bench.  In pertinent part, she stated the following:

> Well, I recall all the evidence that was adduced at the hearing last time, primarily through [the managing principal officer], but I have also considered the evidence that was received during the equitable distribution case about [the corporation], the nature of the business, the kind of work that it does, its ownership, its structure, and I also rely upon the evidence that I heard during the equitable distribution case regarding the way [the husband] operates with respect to his multiple identities, passports, et. cetera.
>
> *     *     *     *     *     *     *
>
> So today, pursuant to the income deduction order that was entered by this Court on August 28th of 2000, I am entering a judgment against [the corporation] in the amount of $9,900 for its failure to make payments for September 1, October 1, and November 1 of the year 2000.

(Emphasis added.)  Immediately at the conclusion of the hearing, the judge entered an "Order Pertaining to Rule Against MMCA," which incorporated the judge's "bench ruling" and "awarded a judgment against [the corporation] in the . . . amount of $9,900," plus interest, in satisfaction of the income deduction order.

"[I]t was plain error for [the trial judge] to go outside the record to find another reason to support [her] decision." Russell County School Bd. v. Anderson, 238 Va. 372, 385, 384 S.E.2d 598, 605 (1989).  Moreover, this is not a case such as

- 52 -

Hansel v. Commonwealth, 118 Va. 803, 808, 88 S.E. 166, 167 (1916), where the trial judge "permit[ted] the evidence . . . given in the [other] case . . . to be read in evidence" in this case. See also Luck v. Commonwealth, 32 Va. App. 827, 834, 531 S.E.2d 41, 44 (2000) (noting that the trial judge "made the letter part of the file and the record"). Neither party offered as evidence any matters proved on the record in the equitable distribution phase of the divorce proceeding.

I agree with the majority that the corporation's attorney might have better stated his objection at trial or in response to the order. I believe, however, that the attorney's closing argument, which informed the judge that "on the evidence before" her the evidence was insufficient to prove the corporation owed income to the husband, adequately preserved for review both the objection to the judge's reliance on evidence not in the record and the objection to insufficiency of the evidence. "The primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials." Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992). The contemporaneous objection requirement may be satisfied by an attorney's closing argument that touches upon the matter at issue. Taylor v. Commonwealth, 28 Va. App. 498, 504, 507 S.E.2d 89, 91 (1998); Fortune v. Commonwealth, 14 Va. App. 225, 228,

416 S.E.2d 25, 27 (1992); Harris v. Commonwealth, 13 Va. App. 593, 596, 413 S.E.2d 354, 355-56 (1992). That was done in this case. Moreover, the judge, who had tried the divorce case and had denied the corporation's motion to intervene in the divorce case, knew the corporation was not a party to the divorce proceeding. The attorney's argument, which directed the judge's attention to "the evidence that's before Your Honor here today," clearly put the judge on notice that she was limited to considering "the evidence . . . before" her at the contempt proceeding. I would hold, therefore, that the attorney preserved for appeal both the issues of insufficiency of the evidence and the limitation of evidence to that which was contained in the record.

In any event, I would hold that to attain the ends of justice we should consider this issue of the judge's reliance on facts not in evidence. See Rule 5A:18. "'An appellate court may . . . take cognizance of errors though not assigned when they . . . are fundamental.'" Cooper v. Commonwealth, 205 Va. 883, 889, 140 S.E.2d 688, 693 (1963) (citation omitted). The judge's "plain error" deprived the corporation of a fundamental right because the only evidence before the trial judge in this limited proceeding was the uncontradicted testimony of the managing principal officer that the corporation did not owe to the husband income, as defined in the income deduction order and by Code § 63.1-250. The evidence before the judge did not

- 54 -

contain a scintilla of proof concerning the evidence previously given in the equitable distribution phase of the divorce proceeding. Cf. Hansel, 118 Va. at 808, 88 S.E. at 167 (noting that the trial judge permitted the evidence from the other case "to be read in evidence").

Moreover, the corporation had no opportunity to know, challenge, or rebut evidence from the prior hearings that the wife or the judge considered significant. The corporation, therefore, was denied the essence of due process. See Goldberg v. Kelly, 397 U.S. 254, 267-71 (1970) (holding that notice and an effective opportunity to defend by confronting and cross-examining adverse witnesses are components of the right to due process); Browning-Ferris Industries v. Kelco Disposal, 492 U.S. 257, 285 (1989) (holding that "a corporation is entitled to due process . . . of law"). "The denial of due process involves the denial of a fundamental constitutional right and falls within the ambit of Rule 5A:18 to attain the ends of justice." Allen v. Commonwealth, 36 Va. App. 334, 338-39, 549 S.E.2d 652, 654 (2001). Applying these principles, we may invoke the ends of justice exception in a case such as here, where the due process violation results in a miscarriage of justice. See id. at 339, 549 S.E.2d at 654. A miscarriage of justice is apparent in this case because the evidence before the judge affirmatively proved that the corporation owed no income to the husband.

I would hold further that the judge's "plain error" in considering evidence outside the record was not harmless. The trial judge generally stated that she also was relying on evidence she heard "during the equitable distribution case, about [the corporation], the nature of the business, the kind of work . . . it does, its ownership, its structure, and . . . [about] the way [the husband] operates with respect to his multiple identities, passports, et. cetera." This error was significant because it impacted upon the lack of credit the judge gave to the unimpeached testimony of the corporation's managing officer.

> While a jury, or a judge trying a case without a jury, are the judges of the weight of the testimony and the credibility of witnesses, they may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with the facts appearing in the record, even though such witnesses are interested in the outcome of the case.
>
> Here [the] evidence was uncontradicted; it was not inherently incredible; and it constituted the only facts appearing in the record. Even . . . [if] the trial judge did not believe [the] testimony, [her] mere belief or speculation is not sufficient to disregard the evidence.

Hodge v. American Family Life, 213 Va. 30, 31-32, 189 S.E.2d 351, 353 (1972). See also Cheatham v. Gregory, 227 Va. 1, 4-5, 313 S.E.2d 368, 370 (1984). The judgment was substantially

- 56 -

swayed by the judge's erroneous consideration of facts not in evidence.

In its sufficiency analysis, the majority opinion operates upon the faulty premises that an argument by an attorney to the judge concerning the incidents of the case is evidence and that the judge's notice of facts adjudicated in another proceeding constitutes evidence. Those premises are contrary to well established principles. See Bernau, 219 Va. at 1041, 254 S.E.2d at 84 (holding that "[i]ndividual and extrajudicial knowledge on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record"); Waye v. Commonwealth, 219 Va. 683, 691, 251 S.E.2d 202, 206 (1979) (approving the judge's instruction to "the jury that the [attorney's] statement was not evidence"); Cook v. Hayden, 183 Va. 203, 226, 31 S.E.2d 625, 634 (1944) (holding "that the statements [of the attorney concerning facts to be proved] were not evidence"); Cummings v. Commonwealth, 24 Va. App. 248, 251-52, 481 S.E.2d 493, 494 (1997) (holding that the attorney's discussion with the judge about facts to be proved is not evidence). Relying upon these faulty premises, the majority misapplies Commonwealth v. Jenkins, 255 Va. 516, 499 S.E.2d 263 (1998). In Jenkins, the Supreme Court held that in reviewing an appeal for sufficiency of the evidence, "the reviewing court must consider all evidence

properly admitted at trial." 255 Va. at 522, 499 S.E.2d at 266 (1998) (emphasis added).

The facts of this case reveal that the judge and the wife's attorney referred to testimony apparently made at the earlier equitable distribution phase of the divorce proceeding to which the corporation was not a party. Neither the judge's nor the attorney's statements are evidence. The wife's attorney neither proffered as evidence nor read into evidence the record from the equitable distribution phase of the divorce proceeding. Although it is the responsibility of the corporation, as appellant, to present this Court with a full record, that responsibility does not include presenting documents not in evidence. See Bernau, 219 Va. at 1043, 254 S.E.2d at 85. The record before us clearly establishes that evidence from the equitable distribution proceeding in the divorce case was not admitted into the record of this hearing. Accordingly, on review for sufficiency of the evidence the majority improperly considered as evidence statements made by the wife's attorney and the judge.

For these reasons, I would hold that the trial judge erred in judicially noticing facts from a proceeding in which the corporation was not a party. This error substantially affected the ruling. I would, therefore, reverse the judgment and remand for rehearing.